Alva Carl REYNOLDS and Gertrude Pauline
Reynolds, Respondents,

v.

Willis E. ARNOLD and Western Gillette,
Inc., a Corporation, Appellants.

No. 54056.

Supreme Court of Missouri,
Division No. 1.

July 30, 1969.

Glenn A. Burkart, Buell F. Weathers, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for defendants-appellants.

Arch M. Skelton, Springfield, Donald E. Bonacker, Springfield, for plaintiffs-respondents.

HOUSER, Commissioner.

Alva Carl Reynolds and his wife Gertrude filed a damage suit against Willis E. Arnold and Western Gillette, Inc. In Count I he sued for personal injuries and in Count II she sued for loss of services of her husband. A trial jury returned verdicts of $30,000 and $2,500 on the two counts, respectively. The trial court ordered a partial new trial as to Count I. On the new trial of Count I there was a jury verdict for $70,000 in favor of the husband. Defendants appealed from the judgments entered for $70,000 on Count I and $2,500 on Count II.

The genesis of the lawsuit was a collision between the front of defendants' truck and the rear of Reynolds' automobile, which had stopped in a line of traffic approaching an intersection in Springfield.

Defendants' first point is that in the trial of Count II the court erred in admitting mortality tables showing the life expectancy of the husband. Defendants argue that there was no proof of permanent injury to him and that under Peters v. Kansas City Rys. Co., 204 Mo.App. 197, 224 S.W. 25, mortality tables are inadmissible without evidence of permanent disability. Defendants also quote from an annotation on

the subject in 50 A.L.R.2d 419, in which at page 421 this is said to be the unanimous view in this country in those jurisdictions where the question has arisen. See also Simmons v. Jones, Mo.App., 361 S.W.2d 860, and four other Missouri decisions cited therein at page 863 [5].

There was evidence of permanent disability but assuming for the purpose of deciding this point that there was no such evidence, or that it was conjectural and contingent and did not demonstrate permanency with reasonable certainty, we do not believe that the error, if any, in admitting the mortality tables materially affected the merits of the action.[1] Neither the husband's nor the wife's verdict-directing instruction submitted the issue of damages based upon permanent injuries to the husband. Instead, the jury was allowed to make an award of the damages he or she "sustained and is reasonably certain to sustain in the future," which is to be distinguished from damage for permanent injuries. Simmons v. Jones, supra, and seven cases cited 361 S.W.2d, 1. c. 863. Further-

more, the wife was awarded the moderate sum of $2,500, which defendants do not claim is excessive. Leaving out of consideration any evidence tending to show permanency of the husband's injuries and disability and considering only the evidence of his general physical and mental condition before and after the collision and the wife's losses resulting from the lessening, impairment and diminishing of his powers and capacities, the award of $2,500 was modest compensation. We do not believe that the admission of the mortality tables had any prejudicial effect upon the amount of the damages, and therefore this point is disallowed. Simmons v. Jones, supra [5,6]; Arroyo v. Keller, Mo.App., 433 S.W.2d 584, 588 [8], and cases cited, 1. c. 588, 589.

Defendants' second point: Error in the trial of Count I in giving Instruction No. 3 because it substantially deviated from M.A.I. 4.01 in that it assumed damage and improperly directed a verdict on the issues of causation and compensatory damages, depriving defendants of a jury trial on these live and vital issues.

Instruction No. 3 omitted the first eleven words of M.A.I. 4.01; otherwise it was identical, viz.:

|  No. 3 | M.A.I. 4.01 |
| --- | --- |
| You must award the Plaintiff Alva Carl Reynolds such sum as you believe will fairly and justly compensate the Plaintiff Alva Carl Reynolds for any damage you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence. | If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence. |

To determine whether this was a necessary modification or an erroneous deviation we must pinpoint the precise issue on trial.

At the first trial of Count I there were three issues: (1) whether defendants

were negligent, i. e., whether they failed to perform a duty owed Reynolds to protect him from harm; (2) causation, i. e., whether such breach of duty caused Reynolds to sustain some injury, and (3) damage, i. e., the nature and extent of the damages suf-

1. "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." V.A.M.R. 83.13 (b); V.A.M.S. § 512.160(2).

fered.[2] The first jury resolved these three issues in favor of Reynolds by returning a $30,000 verdict in his favor. Defendants filed a motion for new trial. Among other assignments of error defendants challenged the sufficiency of the evidence of causal relationship between the collision and the injuries of which Reynolds complained, and permanence of the injuries, and raised the question of excessiveness. In a memorandum opinion the trial judge specifically overruled the assignment that there was no substantial evidence of permanent injury and overruled all other assignments of error generally, except the point that the verdict was excessive. On that point he found the damages "excessive under the evidence, and against the weight of the evidence," suggesting a remittitur of $12,500, otherwise a new trial "for the sole reason that the verdict on Count I is excessive (that is, for the reason that it is, as to amount, against the weight of the evidence) and defendant will be granted a new trial on the issue of damages only, on Count I * * *." The court order provided that if remittitur was not entered by a certain date "Defendants will be awarded a new trial on Count I of the issue of damages only." No remittitur having been made a new trial was ordered "on issue of damages only." There was no appeal of that ruling on Count I, and the matters adjudicated became final.

With the issue thus limited and defined Count I was retried. The issue of negligence was not retried. The general issue of causation, i. e., whether Reynolds sustained some injury as a result of defendants' negligence, was not retried. (That Reynolds received *some* injury was not disputed. Indeed, in final argument defendants' counsel conceded low back strain and cervical strain from the collision and agreed that Reynolds should be compensated for a couple of weeks' disability.) The issue of

damage was the issue retried. This limited issue involved a subordinate issue of causation, i. e., whether Reynolds' principal complaints and manifestations were the result of the collision or had their genesis in something else. The nature and extent of the injuries resulting from the collision was vigorously contested, both parties introducing evidence pro and con on that issue.

Reynolds' evidence, in brief, indicated that before the collision he was able to work and participate actively in life in a normal manner; that following the violent impact of the collision he suffered pain, neck and back strain, and sustained a neurotic reaction; that he has a feeling of apprehension, anxiety and depression; that he cannot sleep; that his physical and mental conditions have deteriorated until now he is disabled and permanently incapacitated; that he has lost sexual ability, has had to quit work, sports, normal household activities, and in effect is a semi-invalid; that his present conditions were either caused by and are the direct result of, or were aggravated by, the collision.

Defendants denied that Reynolds' neurosis and other more serious complaints and manifestations were caused or aggravated by the collision. Defendants claimed that they had their origin in preexisting events and conditions; that Reynolds received no substantial injuries but simply "gave up," retreated and withdrew from life although not physically incapacitated. By cross-examination of Reynolds' witnesses, affirmative evidence from their own examining doctor, and on final argument defendants attempted to demonstrate that the collision was not a violent impact; that prior to the collision Reynolds was suffering from a peptic ulcer and had sustained a cerebral stroke, and that these occurrences were responsible for his present condition. Defendants' medical witness testified that

2. The essential factual elements in a tort action for damages for personal injuries due to negligence are breach of duty owed by defendant to plaintiff (negligence); injury to plaintiff (damage), and a causal connection between the negligence and the injury (causation). Schaefer v. Accardi, Mo.Sup., 315 S.W.2d 230, and cases cited l. c. 233.

after examining Reynolds he did not believe that Reynolds was disabled and saw no reason why he could not work.

In this situation the court gave Instruction No. 3 which, without formally hypothesizing a preliminary finding of the issues for Reynolds, directed the jury to award him compensation for "any damage you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence." We find no error in the giving of Instruction No. 3 under the circumstances, for the following reasons.

■ The first trial of Count I settled the issues of negligence and whether the negligence caused Reynolds some injury [(1) and (2) above]. The only remaining issue was the nature and extent of the damages sustained by Reynolds as a result of the collision [(3) above]. Thus the questions of defendants' liability for breach of a duty and Reynolds' right to *some compensation* for whatever damages were caused had been adjudicated at the time the second trial of Count I commenced. The only issue remaining to be settled was the nature and extent of the injuries flowing from the adjudged liability to pay something, and the amount of damages, general and special, to be awarded as compensation therefor. In framing the instructions for the submission of this remaining issue it was not necessary to resubmit the issues of negligence and causation, and this was not done. It was necessary only to direct the jury to award Reynolds whatever sum would compensate him for those injuries and conditions which the jury found from the evidence were traceable to the collision. Liability and some resultant injury having been established at the first trial, the court in giving Instruction No. 3 was following the rule that "Where a jury in a personal injury action by its verdict has found liability it is bound to award plaintiff such damages, if any, as are commensurate with the nature and extent of the injuries incurred." Porter v. Smoot, Mo.App., 375 S.W.2d 209, 212, citing Coghlan v. Trumbo, Mo.Sup., 179 S.W.2d 705. That is what Instruction No. 3 directed. It did not, as claimed, assume the fact of damage. In order to award damages it was necessary under Instruction No. 3 for the jury to make a finding and determination as to the quantum of damages that Reynolds sustained and that the damages for which compensation was to be allowed were the direct result of the collision. It did not direct a verdict on the issue of causation, as claimed. It did assume that Reynolds was entitled to recover compensation for *whatever damages the jury found*, but properly so, based upon the prior adjudication of the issues of negligence and general causation. Defendants therefore were not deprived of but rather were accorded a jury trial on the remaining issue of the nature and extent of the injuries and conditions resulting from the collision and the amount to be awarded as damages.

■ M.A.I. 4.01 is designed for use when all three elements of a negligence claim are to be submitted to *the same trial jury*. It was inappropriate and needed modification to fit the situation presented here, in which only one of the three elements was to be submitted to the jury. The modification made was necessary and proper. It worked no prejudice to the rights of defendants. Defendants' second point is overruled.

Defendants' third point: Error in the retrial of Count I in permitting Dr. Allison to testify as to his examinations, care and treatment of plaintiff following the first trial because "no report concerning the same had been furnished by said plaintiffs' counsel to defendants' counsel, either prior to trial or prior to the time when said witness took the witness stand, although timely written request therefor had been made of said plaintiffs' counsel by defendants' counsel pursuant to the provisions of Civil Rule 60(b) (1)." [Civil Rule 60.01(b) (1)].

Dr. Allison, Reynolds' examining and treating physician, testified at length at

the first trial, which occurred in February, 1967. Thereafter in 1967 Dr. Allison examined Reynolds twice in August, twice in September, once in October and once in November. He treated Reynolds in a hospital from November 15 to December 19. In 1968 he treated Reynolds during a 2-weeks' stay at a hospital in January, and several times as an outpatient. He also examined Reynolds a few days before the retrial in March, 1968.

On October 18, 1967 Mr. Weathers, counsel for defendants, wrote a letter to plaintiff's counsel enclosing a copy of a report of an examination conducted by defendants' Dr. Lytton in September of that year. In this letter Mr. Weathers stated: " * * * I understand that Mr. Reynolds was re-examined recently by Dr. Allison and perhaps by Dr. Murney. Under Rule 60.01, Missouri Rules of Civil Procedure, we request that we be furnished a report of any examination, previously or hereafter made, of Mr. Reynolds in regard to the alleged condition which has been the subject of the previous examinations by Dr. Murney, Dr. Allison and Dr. Lytton." Plaintiff's counsel did not answer the letter or respond to the request.

The retrial began on March 28 and was concluded on March 29, 1968. On the day before trial, or two days before trial, plaintiff's counsel in a conversation with defendants' counsel informed the latter that Reynolds had seen Dr. Allison and had undergone treatments during the period between the two trials. In that conversation no mention was made of the letter of October 18, 1967 or the subject of medical reports, nor was the subject of failure or refusal to make medical reports discussed.

On the first day of the trial Reynolds testified that during the interim period Dr. Allison had given him 21 electric shock treatments. On the second day of the trial plaintiff called Dr. Allison to the stand to testify and in the course of the examination inquired about his examination of Reynolds

on August 10, 1967. Defendants' counsel objected "to any testimony concerning that last visit because the defendant has not been furnished with a medical report concerning that period and subsequent thereto" and stated that the rules require that a report be furnished. The objection was overruled and Dr. Allison testified in detail with respect to his examinations and treatment of Reynolds during the period in question.

In their motion for new trial defendants alleged that the court erred in admitting Dr. Allison's testimony "because no report concerning the same had been furnished by said plaintiff's counsel to defendant's counsel, either prior to trial or prior to when said witness took the witness stand, although timely written request therefor had been made of said plaintiff's counsel by defendant's counsel pursuant to the provisions of Civil Rule 60(b) (1) [60.01(b) (1)] * * *," as shown in detail by an attached affidavit.

In a memorandum opinion on the motion for new trial the trial judge gave as his reason for overruling the objection to Dr. Allison's testimony that defendants failed to pursue the remedy afforded them by Civil Rule 60 and stated that if there had been "any surprise claimed or any deception practiced by the plaintiff's attorneys shown or contended in this case perhaps (his) ruling might have been different."

At no time, before or during the retrial of Count I, or in the motion for new trial or on this appeal, have defendants asserted, claimed or shown that plaintiff or his attorneys concealed any facts from defendants or that defendants were deceived or surprised by Dr. Allison's testimony, prevented from properly preparing for trial, disadvantaged or hampered in conducting the cross-examination of Dr. Allison, or deprived of an opportunity to procure medical testimony to answer or offset that of Dr. Allison relating to the electric shock therapy and Reynolds' condition in 1967 and 1968. Defendants content themselves with

conclusionary statements in the argument portion of their brief on appeal in which they say they were "deprived of any knowledge that plaintiff's evidence would include testimony" about the subject matter of Dr. Allison's examinations and treatments, and that the admission of the evidence was "highly prejudicial to their defense." They fail, however, to allege, claim or show how or in what manner this deprivation adversely affected their rights.

■ The court did not err in admitting this evidence. It was material, relevant, and pertinent to the issues. It bore directly upon the measure of damages, and the trial court cannot be convicted of error or abuse of discretion in its admission in the absence of a showing of prejudicial error. "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." § 512.160, subd. 2., RSMo 1959, V.A.M.S.

In Enyart v. Sante Fe Trail Transp. Co., Mo.Sup., 241 S.W.2d 268 [3], the trial court's refusal to permit a physical examination of plaintiff was held not error where defendant failed to point out or suggest in what manner it was prejudiced, resting "upon the bald declaration that the denial of the motion was prejudicial." In Bayer v. American Mutual Casualty Co., Mo.Sup., 359 S.W.2d 748, this court refused to review a claim of error in refusing to admit evidence, where no reason was stated why the ruling was erroneous or prejudicial to the appellant, quoting with approval the statement in Jacobs v. Stone, Mo. Sup., 299 S.W.2d 438, 440, that it is "the duty of an appellant to distinctly point out the alleged errors of a trial court and to show that he was prejudiced by the rulings alleged to be erroneous * * *." And see Richards v. Earls, 345 Mo. 260, 133 S.W.2d 381, 386 [9], and Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190, wherein the court said, 1. c. 202: "Upon the (appellant) the

burden rests to affirmatively establish such prejudice. Under these circumstances scant consideration may be given to this assignment (citing cases)."

No showing of prejudice in the admission of this evidence having been made, we cannot convict the trial court of error in its ruling.

Defendants' fourth point: Error in the retrial of Count I in not sustaining defendants' motion for a mistrial during final argument of Reynolds' counsel when he said, "There is another thing that bothers me. We have six competent psychiatrists in this City and five competent psychologists—why did Western Gillette go clear to Kansas City to get them a doctor to testify in this case?" This referred to defendants' only medical witness, Dr. Lytton, a psychiatrist from Kansas City. There was no evidence that psychiatrists practicing in Springfield were available and willing to testify in the case, but the objection was not that the argument went beyond the evidence, but that this was an improper, prejudicial and inflammatory appeal to the sympathy of the jury. In the motion for new trial and on this appeal that objection has been converted into a contention that the argument was unfairly and improperly calculated to inflame provincial and local bias and prejudice in favor of Reynolds and against defendants. Assuming that the point now proposed was sufficiently raised at the time of argument, it is debatable whether the incident amounted to an appeal to sectional or local prejudice, which is universally condemned, 53 Am.Jur. Trial § 499; 88 C.J.S. Trial § 188; Hall v. Rice, 117 Neb. 813, 223 N.W. 4, 78 A.L.R. 1421; F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681; Anno.—Appeals to Prejudice, 78 A.L.R. 1438, III. d. 3. Local or sectional prejudice, p. 1456, or was justified as fair comment on the evidence—that no Springfield doctor (who as a local resident would have to face the jurors from day to day) would testify as the Kansas City doctor testified.

In any event, if it was an improper appeal to local prejudice, we are not convinced that there is such a probability of prejudice that the trial should have been aborted. In determining the need for a mistrial a trial court must be allowed a substantial discretion. Bine v. Sterling Drug, Inc., Mo.Sup., 422 S.W.2d 623, 632. We find no abuse of discretion in this case. Furthermore, after a mistrial was denied defendants' counsel asked that the jury be instructed to disregard the argument, and in response the court ruled: "All right. The jury is instructed to disregard that portion of the argument." "[I]t is only in extreme cases that an admonition to the jury to disregard the improper statement will not correct such misconduct on the part of * * counsel." Southwestern Bell Telephone Co. v. Jennemann, Mo.App., 407 S.W.2d 85, 92. This is not such a case, and in view of the corrective action taken, the absence of any request for further action on the part of the court (such as to strike or to reprimand) and the fact that the trial judge carefully considered the question a second time when it was before him on a motion for new trial, "we feel constrained to defer to the trial court's discretion, which was exercised in the light of knowledge not afforded us by the printed record." Sullivan v. St. Louis-San Francisco Ry. Co., 321 Mo. 697, 12 S.W.2d 735, 741; Edwards v. Lacy, Mo. Sup., 412 S.W.2d 419, 422 [4].

Defendants' last point is that the $70,000 verdict on Count I is so excessive as to indicate bias and prejudice on the part of the jury, thus requiring a new trial, or in the alternative is so excessive as to require a remittitur. The verdict of $30,000 returned at the first trial of Count I was set aside by the trial court on the sole ground that the damages were "excessive under the evidence, and against the weight of the evidence." In their motion for new trial, following the return of the $70,000 verdict at the second trial, defendants attacked the verdict as (1) "excessive in amount" and (2) "so excessive as to show upon its face that it was the result of bias and prejudice on the part of the jury." There is a vital distinction between the two, as pointed out in Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157, 159. Mere excessiveness indicates nothing beyond an honest mistake by the jury in weighing the evidence as to the nature and extent of the injuries and in fixing the amount of compensation to be allowed therefor, and is correctible by remittitur. Excessiveness indicating bias and prejudice, however, savors of misbehavior on the part of the jury, vitiates the entire verdict, and cannot be corrected by remittitur. McConnell v. Pic-Walsh Freight Co., Mo.Sup., 432 S.W.2d 292, 301.

In this case the trial judge denied any relief on either ground of excessiveness for the stated reason that "Civil Rule 78.01 forbids the granting of a second new trial on the ground that the verdict is against the weight of the evidence." The rule provides: "Only one new trial shall be allowed on the ground that the verdict is against the weight of the evidence." See also § 510.330 RSMo 1959.

Granting a new trial on the ground that a verdict is excessive is a holding that the verdict is against the weight of the evidence. Union Electric Co. of Missouri v. McNulty, Mo.Sup., 344 S.W.2d 37, 39 [1]. Where a verdict on a second trial is merely excessive, and one verdict has been previously set aside for this reason, the power of the trial court to grant another new trial on this ground is exhausted, under the express provisions of Civil Rule 78.01 and § 510.330, supra, and its refusal to do so is not reviewable by this Court. See McFarland v. United States Mut. Acc. Ass'n of City of N. Y., 124 Mo. 204, 27 S.W. 436, 440; Campbell v. Hayden, 181 Mo.App. 681, 168 S.W. 363, 366.

Where the trial court, after a second trial of a case in which a previous verdict was set aside for excessiveness,

finds that the second verdict is *so grossly excessive as to indicate bias and prejudice,* it has the power to grant another new trial, even though in so doing the trial court may be said to have "weighed the evidence." Jones v. Pennsylvania R. Co., supra, 182 S.W.2d, 1. c. 159.

The trial court may infer bias and prejudice from the size of the verdict alone, Jones, supra; Sofian v. Douglas, 324 Mo. 258, 23 S.W.2d 126, 129, but it did not do so in this case. On the contrary, it impliedly ruled to the contrary by overruling the motion for new trial, one ground of which was that the verdict was so excessive as to indicate bias and prejudice. Not only did the trial court consider that there was no excessiveness amounting to bias and prejudice, but also it indicated that there was no excess whatever in the verdict. In a memorandum opinion the trial court stated that if the court had authority to grant a new trial for mere excessiveness the court was not persuaded that the verdict was against the weight of the evidence, considering the testimony concerning Reynolds' physical condition before and after the accident, his physical appearance at the trial, and the testimony of the several medical specialists.

■ Appellate courts may not infer bias and prejudice from the size of the verdict alone. "It is not the function of an appellate court to pass on the weight of the evidence in a jury case and that is the reason an appellate court will not make a determination of bias and prejudice of the jury on amount of the verdict alone." Nussbaum v. Kansas City Stock Yards Co. of Maine, Mo.Sup., 359 S.W.2d 335, 341. "There must have been some incident or occurrence at the trial, or error committed, of such a nature as to engender bias, passion or prejudice. [Citing Skadal v. Brown, Mo.Sup., 351 S.W.2d 684, and Nuss-

baum, supra]." McConnell v. Pic-Walsh Freight Co., Mo.Sup., 432 S.W.2d 292, 301. Defendants have not pointed to any incident, occurrence or error transpiring during the trial capable of engendering bias, passion or prejudice, and we have searched therefor in vain. The only thing out of the ordinary was that at one time after protracted direct examination of Reynolds, while he was detailing his difficulties in sleeping, the record shows that he began to cry. A 10-minute recess was requested and granted. The trial resumed. No motion or other request of any kind was made. On this appeal this fact has not been referred to by defendants' counsel. There is nothing to indicate that the tears had any adverse effect upon defendants' rights. Skadal v. Brown, supra, 351 S.W.2d, 1. c. 690 [18].

■ No error of law appearing; the question of mere excessiveness not being reviewable under the facts of this case, and there being no basis for interference with this verdict on the ground that it resulted from bias and prejudice, the judgment must be affirmed.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., STORCKMAN, J., and HENLEY, Alternate Judge, concur.

HOLMAN, J., not sitting when cause was submitted.