Peggy A. WARRINER, Respondent,

v.

Anthony EBLOVI, Jr., and Commercial
Candy Co., Inc., a corporation,
Appellants.

No. 25768.

Missouri Court of Appeals,
Kansas City District.

Sept. 7, 1972.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 1972.

Application to Transfer Denied
Nov. 13, 1972.

Samuel J. Molby, Kansas City (Watson, Marshall & Enggas, Kansas City, of counsel), for appellants.

Jack A. Cochran, Blue Springs (Thomas D. Cochran, Piedimonte & Cochran, Independence. of counsel), for respondent.

## PER CURIAM.

This is an appeal from a final judgment of $30,000.00 for plaintiff (after she complied with an order of remittitur of the trial court of $15,000.00 from the jury's award of $45,000.00) for personal injuries. The injuries resulted from a collision of defendant's one-and-one-half ton delivery truck with the rear end of plaintiff's station wagon at 4519 West 69th Street, Prairie Village, Kansas, on December 18, 1967.

Under their Point I, defendants contend that the court erred in giving plaintiff's Instruction No. 4 for the reason that "it applied the Missouri strict liability concept in a rear end collision case and not the ordinary rules of negligence applied by the state of Kansas." Instruction No. 4, which was given in the form prescribed by MAI 17.16, is this:

"Your verdict must be for plaintiff if you believe:

"First, defendants permitted their truck to come into collision with the rear of plaintiff's automobile, and

"Second, defendants were thereby negligent, and

"Third, as a direct result of such negligence, the plaintiff sustained damage unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

■ Defendants misconceive the nature of the rear end doctrine of this sate. It does not impose "strict liability" as that term is usually employed. "It is 'strict liability' when neither care nor negligence, neither good nor bad faith, neither ignorance will save the defendant." Fresno Air Service v. Wood, 232 Cal.App.2d 801, 43 Cal.Rptr. 276, 279[5]. Strict liability in tort does not rest on negligence, Williams v. Ford Motor Company, Mo.App., 454 S.W.2d 611, nor is contributory negligence, ordinarily applied, a defense to strict liability, Keener v. Dayton Electric Mfg. Co., Mo., 445 S.W.2d 362. Under all of the cases in this state it is clear that a following motorist's liability in a rear end collision case is predicated upon negligence. See the leading case of Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, and cases following it, Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360; and Witherspoon v. Guttierez, Mo., 327 S.W.2d 874, 880. See also McVey v. St. Louis Public Service Co., Mo., 336 S.W.2d 524, which held it not to be error to predicate defendant's liability on the single finding that the bus overtook and collided with the rear of plaintiff's automobile. Note here also that MAI 17.16 permits the affirmative defense of plaintiff's contributory negligence (if supported by the evidence) which defense was here submitted in Instruction No. 5.

■ Although it is not clear, apparently what defendants are arguing is that Instruction No. 4 should have hypothesized defendants' acts of negligence in more detail, such as failure to keep a proper lookout, following too closely, or using excessive speed, and the like. (Compare Pattern Instructions for Kansas, 8.02, 8.03 and 8.21, mentioned by plaintiff in her brief.) Suffice it to say that there exists no appreciable difference between the substantive laws of Kansas and Missouri as contained in KSA 8–543 and Section 304.017, RSMo 1969, V.A.M.S., both prohibiting the drivers of motor vehicles from following another vehicle more closely than is reasonable and prudent. The substantive laws of both states in this regard are practically the same. See Hamilton v. Ferguson, et al., 181 Kan. 474, 312 P.2d 232, 234, where the court said, " * * * the jury might reasonably infer that * * * defendant Zuercher failed to keep a proper lookout

or have his car under control so that he was able to turn it aside and avoid striking the truck in which plaintiff was riding, and that he followed too closely behind such vehicle." See also Deemer v. Reichart, 195 Kan. 232, 404 P.2d 174. The propriety of the giving of Instruction No. 4 is thus controlled and approved by Meredith v. Missouri Pacific Railroad Company, Mo., 467 S.W.2d 79, 82 [1–3]: "Appellants contend that, since this case was tried under Kansas law, there was no applicable MAI and therefore there could have been no deviation. Kansas law, of course, does not apply as to procedure and procedural questions. Neve v. Reliance Insurance Company of Philadelphia, Mo.App., 357 S.W.2d 247, 249 [1, 2]. The form of instruction is a procedural matter governed by the law of Missouri. If the Missouri Approved Instructions include an instruction which correctly states the substantive law of Kansas, the approved instruction must be given. Supreme Court Rule 70.01, V.A.M.R." The spirit and purpose of MAI in submitting only ultimate issues is complied with in Instruction No. 4. MAI, p. XXIII. The courts of Missouri have no concern with the procedure of Kansas as contained in published Kansas Pattern Instructions. Instruction No. 4 is not in error, and defendants point to no case so holding, and Point I is overruled.

Defendants claim error in the court's refusal to give their offered Instruction No. 9. In addition to submitting plaintiff's failure to signal her intention to turn into her private residential driveway (as the evidence showed), and that she suddenly slowed or stopped her automobile without an adequate and timely warning, Instruction No. 9 submitted, additionally: "or in approaching the intersection of her driveway with the roadway intending to turn right, failed to drive her automobile in the portion of the right half of the roadway nearest the curbline; * * *" The evidence was that West 69th Street at the scene of the collision was about thirty feet wide. It had eastbound and westbound lanes for traffic and a lane for parking on its south side. Plaintiff testified that she was travelling in the eastbound traffic lane, which left the parking lane to her right, and defendant Eblovi was travelling in the same lane as she was. Eblovi testified also that he was following plaintiff in the same eastbound lane about three to four car lengths behind her, and two to three car lengths behind her when she made a slight angle and put on her brakes at a driveway. Both had been travelling at about the same speed, 20 to 25 miles per hour. At the time of the collision, the rear of plaintiff's station wagon was out in the street about 10 feet.

Defendants urge that the above quote from Instruction No. 9 is proper under Section 8–544, KSA, requiring that an approach for a right turn at an intersection be made as close as practical to the right-hand curb or edge of the roadway; and Section 8–537, requiring that vehicles proceeding at less than the normal speed of traffic at the time and place and under existing conditions shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway.

Obviously, these two statutes relate to right turns at *street* intersections, and to vehicles proceeding at less speed than normal traffic at the time. There is no evidence in this case from which it could be found that plaintiff violated either statute. And even if that evidence were existent, the offered instruction did not contain the hypothesis of the statute that plaintiff failed to drive her vehicle as close as *practical* or *practicable* to the right-hand curb or edge of the roadway. For these reasons, there was no error in refusing Instruction No. 9, and Point II is overruled.

Defendants say the following argument of plaintiff's counsel was erroneously allowed by the court over their objection

that it amounted to plaintiff's instructing the jury as to matters of law:

"Now, the Court said if they struck her in the rear, and there has been no other evidence except the fact that he did strike them in the rear—I had the reporter type up a transcript of Mr. Eblovi's testimony so that I would have it word for word, and I said,

'Question: Now, your truck did strike her car in the rear end?

'Answer: Right.'

"So, the Court says if that's the case, then, he's instructing you as the Jury, not me, not Mr. Molby, but His Honor is instructing you the law in this case is if his truck struck my client's car in the rear, you must find a verdict and return it on behalf of the plaintiff,—

"MR. MOLBY: If the Court, please,
—

"MR. THOMAS COCHRAN: (Continuing)—unless,—

"MR. MOLBY: Excuse me.

"MR. THOMAS COCHRAN: (Continuing)—That's all right, Mr. Molby,—unless plaintiff either failed to signal her intention to turn.

"Mrs. Warriner testified to you about how she made her signal to turn.

\* \* \* \* \* \*

"(Whereupon, the following proceedings were had in the presence but OUT OF THE HEARING OF THE JURY:)

"MR. MOLBY: If the Court, please, I desire to object to the initial statement of counsel to the effect that the existence of this collision entitled the plaintiff to recover. There is a further requirement in Instruction No., I believe, 2 that the Jury find that the defendants were negligent.

"THE COURT: The objection is overruled. You will have a chance to argue and the Jury has the written instructions that they can read."

Defendants did argue the matter of Eblovi's negligence or liability.

In State ex rel. State Highway Commission v. Bailey, et al., 234 Mo.App. 168, 115 S.W.2d 17, a condemnation case, there was nothing in the court's instruction to warrant an argument that plaintiff had the right to deprive defendants entirely of ingress and egress to and from their property, and the objection to the argument was thus properly sustained. In Stroh v. Johns, Mo., 264 S.W.2d 304, the argument was that excessive speed was the proximate cause of the collision when that issue was not instructed upon, and the trial court granted a new trial upon that ground. These two cases, cited by defendants, are thus distinguishable. Other cases support actions of the trial court in ruling objections to argument of counsel upon discretionary grounds, the court being present and in a position to observe any effect of the argument upon the jury. See Erny v. Revlon, Incorporated, Mo., 459 S.W.2d 261, 267[6–8], and cases cited. "It is elementary law that counsel in argument may comment on the instructions, but, of course, improper comments are not allowable." Rhomberg v. Israel, 222 Mo.App. 238, 296 S.W. 860, 864[5]. Except for the omission of a finding of negligence from the fact of the rear end collision, the comment of counsel was upon plaintiff's instruction. The matter of the finding of negligence, as noted by the court, was contained in the written instructions, and counsel for defendants argued that matter. Under all of the circumstances the jury could not have been misled into believing that a verdict for plaintiff could be based upon the fact of the collision standing alone and without negligence. Point III is overruled.

Defendants lastly contend that the verdict was so grossly excessive, in the light of the evidence, as to demonstrate bias and prejudice on the part of the jury, or that it

was excessive for the type of injury suffered by plaintiff, was not reasonably uniform with verdicts in other cases, and was not cured by the $15,000.00 remittitur ordered by the trial court.

■ The amount of the verdict, standing alone, does not necessarily indicate bias and prejudice of the jury. Knight v. Swift and Company, Mo., 338 S.W.2d 795, 802[13–15], and cases cited. Something more in the record than the size of the verdict must appear, and defendants point to nothing that happened in the trial which would have engendered bias and prejudice and would have constituted misbehavior on the jury's part. The trial court here, as it was authorized to do (Reynolds v. Arnold, Mo., 443 S.W.2d 793), did not set aside the verdict because of bias and prejudice on the basis of the amount of the verdict, but merely ordered the $15,000.00 remittitur, thus correcting what the trial court thought must have been "an honest mistake by the jury in weighing the evidence as to the nature and extent of the injuries and in fixing the amount of compensation to be allowed therefor." Reynolds v. Arnold, supra, loc. cit. 443 S.W.2d 800[8].

Plaintiff at the time of trial was 33 years of age. She had a life expectancy, as shown by mortality tables in evidence, of 43.79 years. Before the collision she was in excellent health, able to perform all of her duties as a housewife and mother, and be active in community and church affairs. The jury could find from the evidence of damage to the vehicles involved that the collision was not a minor one. For almost four years after the collision to the trial, plaintiff has suffered constant pain and all her activities within and without her home have been drastically curtailed by reason of her injuries. The medical evidence in the record is voluminous, and it is not necessary to detail it beyond the conclusions of examining and treating physicians. On behalf of defendants, Dr. Donald Kirk Piper, M.D., an orthopedic surgeon, examined plaintiff on

October 2, 1970. He found some mild wasting of the mass of the left trapezius— the muscle on top of the left shoulder. The left triceps muscle on the back of the arm was weaker than the right. The left triceps, biceps and brachi reflexes were depressed as compared to the right. His objective findings were permanent in nature, were consistent with the patient having complaints of pain and discomfort, and he thought it was reasonable that there had been some minor stretching of the nerves in the neck.

Dr. Richard Earl Whitehead treated plaintiff at his office on the day of the collision. His diagnosis then was that of a cervical sprain, meaning a stretching or partial tearing of the muscles and ligaments which span the neck. He prescribed a (Stryker) neck support to permit healing, and medications for pain and to prevent scar tissue in the injured areas. He saw plaintiff on about 7 occasions to October, 1968, and referred her to a therapist. His conclusion from his findings made almost 3 years after the accident was that the problems plaintiff has are permanent, will basically stay the same, were caused by the accident, and that there is a possibility of future medical treatment—pain medication and physical therapy.

Dr. Donald F. Coburn, a neurosurgeon, saw plaintiff on November 6, 1969. His diagnosis was the residual of a cervical sprain or whiplash resulting from the accident of December, 1967. He found muscle spasm and tenderness in the cervical region and muscles of the upper back, limitation of neck motion, left triceps reflex less active than the right, decrease of pain sense in the left thumb and index finger, and irritation in the sixth cervical nerve root on the left side. Dr. Coburn performed a myelogram upon plaintiff at Research Hospital on October 31, 1970, and the result was negative, ruling out a herniated cervical disc, which brings into focus Dr. Whitehead's further conclusion given before the myelogram was performed that if it were negative he would assume that the

nerve irritation was on the basis of scar tissue where the nerves passed through, and he would not feel that anything further could be done.

Dr. Harry B. Overesch, M.D., an orthopedic surgeon, examined plaintiff on September 28, 1969. He found tenderness at the suboccipital triangle region and at the base of the neck. There was muscle spasm in the left side of the neck, the left bicep and tricep muscles were diminished, as was the left brachioradialis reflex. There was a straightening of the fourth, fifth, sixth and seventh cervical vertebrae, with nerve root irritation, and irritation of the occipital sensory nerves. Dr. Overesch's diagnosis was that of a cervical spine or neck spine sprain or strain which was moderately severe and was the result of plaintiff's December 18, 1967, injury. He felt that after that period of time plaintiff's condition was permanent, and that there would be continued nerve root irritation.

The total of plaintiff's medical expenses was $1,512.15 to the date of trial.

The guiding case law on the issue of a claimed excessive verdict for personal injuries has been often stated. An appellate court may determine, as a matter of law, whether a verdict is in excess of the maximum amount which the evidence will support; the assessment of damages is primarily the function of the jury, whose duty it is to award such sum as reasonably will compensate for the injuries sustained; and there is no precise formula for determining that amount. Gathright v. Pendegraft, Mo., 433 S.W.2d 299, 317[32], and cases cited. Plaintiff's age, and the nature, extent and permanency of her injuries are paramount factors, and in considering the question, each case must be decided upon its own peculiar facts. Painter v. Knaus Truck Lines, Inc., Mo., 375 S.W.2d 19, 26[8, 9]; Conlon v. Roeder, Mo., 418 S.W.2d 152, 160[12].

In addition to the above medical evidence all tending to show a permanent injury which could result in future therapy and medication for the balance of the some 43 years of plaintiff's life, as the jury could find, plaintiff testified in detail as to her pain and suffering for the past three years before trial. Immediately after the accident she felt nauseated and dizzy, and had pain in her neck. After seeing Dr. Whitehead she took 23 diathermy treatments through March 1, 1968, with hot packs, massage and the painful exercise of physical therapy. She underwent an electromyelogram which was done by the insertion of needles into her muscles for the attaching of electrodes. Each day since she has undergone pain in her neck, head, and down through her shoulder and arm, together with a general soreness and stiffness. She has had to be down in bed one day a week. The jury could conclude that these conditions, together with the cost of medical treatment therefor, would continue the rest of her life.

Defendants have cited several older cases holding that jury awards were *not* excessive. Steele v. Yacovelli, Mo.App., 419 S.W.2d 477, decided in 1967 that a $7,500.00 award for a permanent cervical sprain should not be disturbed. An award in 1962 in Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, of $7,500.00 for a permanent cervical injury to a 28 year old man was not disturbed. In 1966, the court, in Stephens v. Guffey, Mo., 409 S.W.2d 62, affirmed an award of $19,670.00 to a 29 year old woman who had $2,300.00 medical expenses, loss of wages of $3,100.00, and a reduction in earning capacity, with a probability of a future intervertebral disc operation, and with permanent injuries. No case has been cited which recently holds that an award such as is here present is excessive as a matter of law. It is noted that nothing more may be done for plaintiff by way of surgery to relieve her condition. Of interest are the cases cited in the Stephens opinion which, in 1958 and 1961, affirmed awards of $20,000.00 to 29 and 38 year old plaintiffs; Riggs v. Metcalf, Mo., 315 S.W.2d 791; and Appelhans

v. Goldman, Mo., 349 S.W.2d 204. The jury has acted in this case, the trial court in its exercise of its discretion has reduced the award, and in view of the well known increase in the cost of living since the Riggs and Appelhans cases, defendants' argument that the judgment for personal injuries to plaintiff of $30,000.00 is excessive as a matter of law is not persuasive.

The judgment is affirmed.