**Patricia Ruth TERRELL,**
**Plaintiff-Respondent,**

v.

**BAILEY LIMESTONE CO., INC.,**
**Defendant-Appellant.**

**No. KCD 28982.**

Missouri Court of Appeals,
Kansas City District.

Nov. 27, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1978.

Application to Transfer Denied
Feb. 13, 1979.

Roy A. Larson, Thomas R. Larson, Morris, Larson, King, Stamper & Bold, Kansas City, for defendant-appellant.

Harry L. Porter, Marceline, for plaintiff-respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Action for damages for personal injuries received in automobile collision. Jury returned verdict for plaintiff for $25,000.00. Defendant has appealed from the ensuing judgment.

On December 15, 1972, at around 4:00 P.M., Patricia Ruth Terrell was driving her 1972 Ford LTD with four passengers eastbound on Route Z just outside Marceline, Missouri. The blacktopped road surface was icy. Mrs. Terrell slowed her vehicle preparatory to making a right turn into a driveway. She applied her brakes and activated the right turn signal light. As she slowed she noticed that a truck which had been following her began to get closer to her automobile. She slowed her vehicle to a speed of about two miles per hour and had just begun to turn into the driveway when the truck struck her auto in the rear, knocking it into a ditch and causing injuries to Mrs. Terrell.

Minor F. Martin, an employee of Bailey Limestone Co., Inc., was the driver of the truck, owned by Bailey. According to him, he was following the Terrell auto at a distance of about 200 to 300 feet at approximately 30 miles per hour when, without warning, the Terrell auto stopped in the road in front of him. He applied his brakes, but, because of the icy conditions, the wheels locked and the truck slid into the rear of the Terrell auto.

At the trial, Mrs. Terrell's claim for damages was submitted under the following instruction:

"Your verdict must be for plaintiff if you believe:

"First, defendant was following the 1972 model Ford car operated by the plaintiff too closely, and

"Second, defendant was thereby negligent, and

"Third, as a direct result of such negligence, the plaintiff sustained damage,

"unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

Defendant Bailey submitted the following instruction, given to the jury:

"Your verdict must be for the defendant whether or not defendant was negligent if you believe:

"First, plaintiff stopped on the highway in front of defendant's truck, without adequate and timely warning in light of existing conditions; and

"Second, plaintiff's conduct submitted in paragraph First was negligent; and

"Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

The jury returned a verdict for plaintiff and fixed her damages at $25,000.00. After its motion for new trial was overruled, defendant appealed.

In this court, the first assignment of error is predicated on the failure of the trial court to order a new trial because the term "negligent" as used in plaintiff's verdict-directing instruction was not defined for the jury. Appellant contends that such definition was required in order to fairly submit the issues to the jury and that the absence of definition of the term resulted in a lack of direction for the jury and gave them a roving commission.

The question here raised has been put at rest under MAI revisions effective January 1, 1978, under which the term "negligent" or "negligence," if it appears in an instruction, must be defined. See Notes on Use, MAI 11.02 (1977 Revision). At the time of trial of this case (April, 1976) no clear-cut

rule had been established regarding the effect of failing to give an instruction defining the term. In the most recent case in the Supreme Court involving the question, the court expressed no opinion as to whether or not the absence of such definition constituted prejudicial error. The court noted "* * * that the better practice is to include such a definition where the term negligence appears in any of the instructions." *Epple v. Western Auto Supply Co.,* 548 S.W.2d 535, 544[17] (Mo.banc 1977).

In *Carter v. Consolidated Cabs, Inc.,* 490 S.W.2d 39, 42–43[3–4] (Mo.1973), the court, after reviewing the prior cases on the subject, concluded that failure to define the term "negligently" as used in plaintiff's verdict-directing humanitarian instruction which submitted that the defendant "negligently failed to so swerve" was not error. The instruction also required a finding that defendant "by using the highest degree of care * * * could have avoided injury to plaintiff by swerving" and the term "highest degree of care" had been defined. In holding that failure to define "negligence" was not error, the court said: "Failure to swerve is not a technical term, but rather is one in everyday understanding of jurors, and highest degree of care was defined." 490 S.W.2d 43.

A similar approach is found in *Rakestraw v. Norris,* 478 S.W.2d 409, 420[25–27] (Mo. App.1972), where the negligence submitted was that "defendant either: violated the traffic signal, or failed to keep a careful lookout" (478 S.W.2d 416) and no definition of "negligent" was given, the court said (478 S.W.2d 420):

"* * * We realize that it is not an M.A.I. requirement that a definition of the word negligence be given whenever that term appears in the instructions, *Brewer v. Swift & Company,* Mo., 451 S.W.2d 131, 134, and perhaps if plaintiff had submitted her case solely upon a violation of the traffic signal, such definition would have been unnecessary. However, there is no specific statutory duty to maintain a careful lookout in this state, except as that duty inheres

in the requirement that '[e]very person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner . . . and shall exercise the highest degree of care.' § 304.-010, par. 1. 'Keeping a careful lookout' does not in itself denote the exercise of a specific standard of care; it is a term of variable meaning, depending upon the context in which it is used. In this particular case, the defendant was required to exercise the highest degree of care in the maintenance of a lookout to discover the presence of other persons and objects on the streets and to become aware of dangerous situations and conditions there existing, *Miller v. St. Louis Public Service Company, supra,* 389 S.W.2d 771[2], but the jury was given no standard by which to measure his duty because the terms 'negligent' and 'negligence' were not defined. As stated, because of the broad generality of the lookout submission, it is our opinion that the terms 'negligent' and 'negligence' should have been defined, and that plaintiff's failure to define those terms was prejudicial to the defendant."

In *Cunningham v. Hayes,* 463 S.W.2d 555, 562–565 (Mo.App.1971), the failure to define negligence in a res ipsa submission was held error. The court stated (463 S.W.2d 564–565):

"To submit MAI res ipsa loquitur negligence, a finding of probability, without defining the equivalent standard of care, an ingredient of that probability, is substantively insufficient as depriving the jury of a necessary basis for their finding."

Appellant relies particularly upon the *Rakestraw* and *Cunningham* cases. Appellant contends that the term "was following * * * too closely" is a term of variable meaning, depending upon the context in which it is used. Appellant points out that the statutory prohibition of the practice is found in Section 304.017, RSMo 1969, as follows:

"The driver of a vehicle * * * shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway. * * *."

There is, thus, a statutory duty on the part of an operator of a motor vehicle not to follow another vehicle too closely. The statute is not specific in stating the distance. Variables are involved—speed, traffic and condition of the roadway. However, given the general familiarity of the public with automobile operation, jurors of average intelligence could be expected to understand that "following too closely" would mean that the driver of the following vehicle should not be so close to the vehicle ahead that he could not, under the circumstances, avoid striking the vehicle ahead which undertook a properly signalled and executed maneuver which involved a reduction of speed. To have added, in a case such as this, the MAI definition of negligence (MAI 11.02 II), would not have brought specifically to the jury's attention the variables recognized by the statute as involved in determining a reasonable following distance. In this case, there was no evidence of unreasonable speed on the part of either driver and other traffic was not a factor. There was agreement as to the slick condition of the roadway. In the comparatively simple circumstances of this case, the failure to define negligence for the jury was not reversible error.

Appellant next contends that the trial court erred in failing to order new trial because a juror intentionally concealed a prior insurance claim.

On voir dire, appellant's counsel inquired:

"Have any of you had any lawsuits for personal injuries by any chance or made any claim for injuries to you or to members of your immediate family?"

One panel member stated that his father had been killed on the railroad and he made a claim against the railroad.

Counsel then inquired:

"Anyone else made a claim or had a lawsuit of that kind or nature either for your or your immediate family?"

No further response was made to the inquiry.

At a post-trial hearing, juror Albertson acknowledged that, in February, 1972, her automobile had been struck from behind by another vehicle at a stop sign in Chillicothe. She sustained an injury to her neck for which she received chiropractic treatment. She and her husband made a claim against the driver of the other automobile and received $600 in settlement of their claim. In explanation of her failure to disclose this occurrence she stated that she considered the incident in which she was involved "just a mishap because we didn't even call the police. * * * I compare it nothing to this [case] because this was an accident to me; * * *." She stated that she did not hear the word "claim" in the voir dire question. She also said that if she had heard the word she thought that she would not have responded because she "forgot about it." She said that she did not associate her claim with the lawsuit and did not see any connection between her case and the respondent's. She said that she may have thought of her accident during the trial, but that she did not believe it influenced her mind either way.

Appellant relies upon *Beggs v. Universal C.I.T. Credit Corporation,* 387 S.W.2d 499 (Mo.banc 1965) as authority supporting his contention that Ms. Albertson intentionally concealed a material fact and that the trial court abused its discretion in overruling the motion for new trial because respondent did not have a trial before a jury of twelve fair and impartial persons.

As the court pointed out in *Beggs,* the determination of whether or not the failure of a juror to respond to a question concerning his qualification amounted to intentional concealment is a matter for the sound discretion of the trial court, reviewable only to ascertain whether or not the record "unmistakably" discloses an abuse of discretion. 387 S.W.2d at 503.

In *Beggs,* the action was against a finance company for unlawfully taking a truck in connection with a debt owed by plaintiff to the finance company. On voir dire, jurors were asked individually whether or not they had ever had any trouble with a finance company. Three jurors to whom the question was propounded responded negatively. At the post-trial hearing, it was shown that they had had such troubles. One juror admitted that he remembered the problems which he had had when the question was asked but responded negatively because he didn't think his experience had any bearing. One said that he did not think about his numerous encounters with finance companies. Another responded that he did not consider his experience "trouble." Another juror who had not responded to a question of the entire panel about being a party to a lawsuit acknowledged that he remembered when the question was asked an action in which he had been involved but he felt it had nothing to do with the case on trial.

The Supreme Court found that the jurors' post-trial testimony showed that they willfully and intentionally withheld information which should have been disclosed on voir dire and it rejected the trial court's contrary finding.

In this case, the juror did not acknowledge that her experience was recalled to her on the voir dire examination. The trial court, being aware of the circumstances of the voir dire and having the opportunity to observe the juror at the post-trial hearing was in a far better position than this court to assess the credibility of her explanation that she did not hear the word "claim" in connection with the inquiry about "lawsuits or claims." On this record this court cannot say that an abuse of discretion on the part of the trial court "unmistakably appears" and its action will not be disturbed. See *Goodman v. Firmin Desloge Hospital,* 540 S.W.2d 907, 910–911[1] [2–8] (Mo.App.1976).

Appellant contends that the $25,000 verdict in favor of respondent is excessive under the rule of reasonableness and uniformity and that it should have been reduced by the trial court by remittitur.

Respondent was 20 years of age at the time of the accident. She sustained a severe sprain to the cervical area of the spine. She was hospitalized for two days, in traction. Thereafter she wore a cervical collar

for a time. At the time of the trial in April, 1976, she was still bothered by pain in her neck for which she took muscle relaxants and received periodic traction. She complained of more frequent headaches following the injury and pain in her arms. According to respondent, she lost 50 weeks of work because of her injuries. Her normal pay was around $86 per week. The physician who treated her said that she could have returned to work after 10 weeks. According to her physician, respondent's "condition is not being lessened in severity so it must be permanent."

Basing its argument upon the rule of uniformity of verdicts, the sole authority cited by appellant as involving a case fairly comparable with the present case is *Salzwedel v. Vassil,* 351 S.W.2d 829 (Mo.App.1961). In that case a verdict in favor of a 35-year-old housewife who had sustained injuries somewhat comparable with those sustained by respondent was reduced by the appellate court from $9,000 to $6,000.00. Appellant acknowledges that inflation must be considered in applying that case today but suggests that considering that factor, an award of $12,000 in this case would be reasonably comparable with the 1961 $6,000 awarded in Salzwedel.

This court is not convinced that the single authority cited by appellant requires reduction of the verdict in this case. There are distinguishing factors. Respondent here was hospitalized, although briefly. The plaintiff in Salzwedel was not hospitalized. Respondent is a younger person than plaintiff in Salzwedel. Although the doctrine of remittitur is still subject to application by an appellate court in Missouri (*Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417, 423–424 (Mo.banc 1973)), it must be obvious that Salzwedel is the product of a time of closer appellate scrutiny of the amount of a verdict. There have been relatively few cases in recent years which have dealt with the amount of awards for injuries in cases such as this. Worthy of note is *Warriner v. Eblovi,* 485 S.W.2d 700 (Mo.App.1972), where a judgment of $30,000 for a cervical sprain was sustained. In that case plaintiff did have $1500 medical expenses and in this

case the amount of respondent's medical expenses was not placed before the jury although she obviously had such expenses. The injury in *Warriner* may have been somewhat more serious but, in view of that case, the judgment for $25,000 in the present case cannot be said to violate the uniformity rule.

Judgment affirmed.

All concur.