STATE of Missouri, ex rel. AMERICAN MEDICAL INTERNATIONAL, INC., and Notami Hospitals of Missouri, Inc., Relators,

v.

The Honorable J. Miles SWEENEY, Judge of the Circuit Court of Greene County, Missouri, Respondent.

No. 18219.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 23, 1992.

Motion for Rehearing or to Transfer Denied Jan. 14, 1993.

Application to Transfer Denied Feb. 23, 1993.

Timothy J. Phillips, Don V. Kelly, Phillips & Phillips, St. Louis, for relators.

M. Douglas Harpool, Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for respondent.

PER CURIAM.

The court being of the opinion that the preliminary order in prohibition issued herein was improvidently granted, it is ordered that said preliminary order be quashed and the petition in prohibition be dismissed. *State ex rel. Douglas Toyota v. Keeter,* 804 S.W.2d 750, 752[1–4] (Mo. banc 1991); *State ex rel. Collins v. Edwards,* 652 S.W.2d 98 (Mo. banc 1983).

MAUS, Judge, dissenting.

I dissent. The following is an outline, gleaned from the record, of the factual basis for my dissent. In the underlying action, plaintiffs, Nina Evelyn Wright–Burdette (Lyn) and Jon Paul Burdette (Jon), her husband, seek to recover against defendants-relators, American Medical International, Inc., and Notami Hospitals of Missouri, Inc., damages for personal injuries to Lyn, resulting from two defective temporal mandibular joint interpositional implants ("TMJ implants"). The allegations of liability in the petition were as follows:

"15. That on or about July 31, 1984, Defendant AMI sold/and or transferred for purposes of Mo.Rev.Stat. 537.760 two temporal mandibular joint interpositional implants (hereinafter referred to as "TMJ implants") manufactured by Vitek, Inc., to Lyn.

16. That on or about July 31, 1984, Lyn underwent TMJ surgery at Springfield Community Hospital wherein two TMJ implants manufactured by Vitek, Inc., and supplied by Defendant AMI were implanted into Plaintiff.

17. That the proplast implants were defective in that they were designed and manufactured with materials including but not limited to Teflon that caused the implants to break apart, fragment, and function improperly.

18. That the proplast implants were used in a manner reasonably anticipated.

19. That Defendant AMI had no reason to believe that those for whose use the implant was supplied would realize its dangerous condition.

20. That the implants when supplied by Defendant AMI to Lyn were in a defective condition and were unreasonably dangerous when put to a reasonably anticipated use."

The respondent frames the issues by acknowledging the petition states a claim based upon the doctrine of "strict liability", not negligence. The petition was filed November 13, 1991. Relators first filed a motion to dismiss the petition for the reason it failed to state a cause of action. This motion was denied. Thereafter, on March 25, 1992, relators filed a motion to dismiss the action, without prejudice, because of plaintiffs' failure to file the affidavit required by § 538.225 RSMo 1986. The respondent overruled that motion. By their petition in this proceeding, relators ask this Court to require "the respondent to dismiss said action with prejudice and to refrain from proceeding further therein and for costs expended herein."

The relators first contend the trial court should be required to dismiss the petition because it fails to state a cause of action as the doctrine of strict liability is not applicable to the sale or transfer of TMJ implants by a hospital. They obfuscate that issue by relying principally upon *Racer v. Utterman*, 629 S.W.2d 387 (Mo.App.1981), appeal dismissed, *cert. denied*, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982), and citing other cases in which liability is based upon a health care provider's use of a defective medical device such as a hypodermic syringe or needle that breaks during use in providing medical services. Those cases do not support relators' first contention. They involve the health care provider's "use" of a defective product or device as distinguished from the "sale or transfer" of a defective product or device.

On the other hand, the respondent points out the doctrine of strict liability stated in *Restatement (Second) of Torts*, § 402A (1965), judicially adopted in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969), is applicable to sellers as well as manufacturers. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984). Respondent argues this includes a hospital that sells or transfers a medical device to a patient in the course of rendering medical services to that patient. The doctrine was considered to be applicable to a mechanical heart valve in *Spuhl v. Shiley, Inc.*, 795 S.W.2d 573 (Mo.App.1990).

The relevant portion of the doctrine of strict liability has been stated in the following terms:

"Under the modern doctrine of strict products liability, and the Restatement (Second), any person who is 'engaged in the business of selling products for use or consumption' is subject to liability. The rule stated in the Restatement applies to 'any manufacturer of such a product, [and] to any wholesale or retail dealer or distributor ...' *Restatement (Second) of Torts, supra*, comment f, at 350. Parties in the chain of distribution of a product, including manufacturers, sellers, wholesale distributors or other middlemen in the manufacturing and selling process come within the umbrella of the rule. 1 *Amer. Law Prod. Liab.* 3d §§ 5.4, at 13, 5.5, at 15, 5.6, at 16–17 (1987); 2A L. Frumer and M. Friedman, *Products Liability*, § 6.18 at 6–252 *et seq.; Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Kopp v. C.C. Caldwell Optical Co.*, 547 S.W.2d 872 (Mo.App.1977); *Means v. Sears Roebuck & Co.*, 550 S.W.2d 780 (Mo. banc 1977); 63 Am.Jur. 2d, *Products Liability*, § 572 at 816 (1984) citing numerous decisions.

'Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. In some cases, the retailer may be the only member of that enterprise reasonably available to

the injured plaintiff.... [37 Cal.Rptr. at 899, 900] 391 P.2d at 171, 172.'

The retail druggist as well as other retailers come within the rule. *See* 63 Am.Jur.2d, *Products Liability*, § 721 at 1019 (1984)." *Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo.App.1987).

"The theory of strict tort liability holds 'one who sells' a defective product unreasonably dangerous to the user liable for resulting injury." *Zafft* at 244.

"In strict liability, '[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property.' *Richardson v. Holland*, 741 S.W.2d 751, 753[3] (Mo.App.1987), quoting *Restatement* section 402A(1). Under comment j to section 402A a product may be rendered unreasonably dangerous because of the absence of a warning as to its use. *Racer*, 629 S.W.2d at 393[1]. A product may be found to be 'unreasonably dangerous' and actionable under *Restatement* section 402A when it is 'defective and dangerous when put to a use reasonably anticipated.' *Hill* [*v. Air Shields, Inc.*] 721 S.W.2d [112] at 117[5] [ (Mo.App.1986) ] citing *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362, 366[7] (Mo.1969)." *Spuhl* at 577.

The doctrine is discussed in *Products Liability—Body Implantations*, 1 A.L.R.4th 910, 921 (1980), *Strict Liability for Medical Services*, 100 A.L.R.3d 1184, 1205 (1980), and *Physicians; Hospitals—Strict Liability*, 54 A.L.R.3d 250, 258 (1974).

Plaintiffs' petition alleges relators sold Lyn defective TMJ implants. By implication it alleges they did so in the course of their business.

"Where it may be gleaned from the petition that the cause of action attempted to be stated belongs to that class of cases of which the circuit court has general jurisdiction, that court has jurisdiction to determine the sufficiency or insufficiency of the petition, and, if it should hold a bad petition good, or a good petition bad, such holding would be error which could be corrected by appeal or other appropriate remedy, but it furnishes no ground for prohibition." *State ex rel. Leake v. Harris*, 334 Mo. 713, 719, 67 S.W.2d 981, 982 (banc 1934).

The trial court had jurisdiction to determine if plaintiffs' petition stated a cause of action and did not clearly abuse its discretion. I would not issue the writ on the basis the petition failed to state a cause of action under the doctrine of strict liability adopted in *Keener*, supra.

However, that does not mean the trial court should not have dismissed the action because of plaintiffs' failure to file the affidavit required by § 538.225. That section is a part of Chapter 538—Tort Actions Based on Improper Health Care, adopted in 1986. The parts of that chapter directly applicable to this proceeding are as follows:

"**538.205. Definitions.**—As used in sections 538.205 to 538.230, the following terms shall mean:

.    .    .    .    .

(4) '**Health care provider**', any physician, hospital, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate;

(5) '**Health care services**', any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized:".

"**538.225. Affidavit by a health care provider certifying merit of case—content filed, when—failure to file, ef-**

fect.—1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

3. A separate affidavit shall be filed for each defendant named in the petition.

4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended.

5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice."

The requirement of the affidavit specified in § 538.225 has been held to be constitutional. *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503 (Mo. banc 1991).[1]

The disposition of this issue requires a determination of whether or not the plaintiffs' claim is subject to Chapter 538 and, in particular, § 538.225. Of course, this question is to be determined by the language of Chapter 538. The question may be answered by the plain meaning of the words used in that chapter. If that is the case, there is no need to resort to the canons of statutory construction to determine the intent of the legislature in adopting Chapter 538 and, in particular, § 538.225.

"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.... And, where a statute's language is clear and unambiguous, there is no room for construction.... In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence...." *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). (Citations omitted.)

Also see *State ex rel. Metro. St. Louis v. Sanders*, 807 S.W.2d 87 (Mo. banc 1991).

The claim alleged in plaintiffs' petition is one of strict liability resulting from the relators' sale of two defectively designed TMJ implants. By its terms, § 538.225 is applicable "[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services."[2]

"Professional services shall include, but are not limited to, *transfer to a patient of goods* or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized." § 538.205(5). (Emphasis added.) The term "goods" is broad enough to include "TMJ implants."[3] As stated, plaintiffs' claims are based upon the

1. Other provisions of Chapter 538 have also been held constitutional. Specifically, § 538.-210, limiting noneconomic damages; § 538.220, addressing how damages may be paid; and § 538.230.2, modifying traditional rules of joint and several liability, were upheld in *Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898 (Mo. banc 1992), and *Vincent by Vincent v. Johnson*, 833 S.W.2d 859 (Mo. banc 1992).

2. Each regulatory section of Chapter 538 is prefaced by the same or similar language. §§ 538.-210, 538.215, 538.220, 538.225 and 538.230.

3. A recognized definition of "goods" is: "Animate or inanimate personal property that is visible, tangible, and movable and has intrinsic value in itself as distinguished from real estate or freehold property or from personal property of the class of choses in action." Webster's Third New International Dictionary (Unabridged), p. 979 (1976).

transfer of TMJ implants to Lyn. In my opinion, the plain meaning of the language of the quoted portions of § 538.205(5) and § 538.225 encompasses the claims stated in plaintiffs' petition.

However, it could be argued that the requirement of a written opinion that the defendant health care provider failed to use such care as a reasonably prudent health care provider would have under similar circumstances, indicates that § 538.225 is applicable only to claims based upon the negligence of a health care provider. Dictim in *Mahoney,* a case involving negligent medical malpractice, implies that an affidavit is not required where a plaintiff shows the cause of action stated in a petition "does not require proof of standard of care by expert opinion". *Mahoney,* 807 S.W.2d at 508.

Nonetheless, plaintiffs' claims are based upon the transfer of defectively designed TMJ implants. To recover, plaintiffs must prove:

"(1) defendant sold the product in the course of its business;

(2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use;

(3) the product was used in a manner reasonably anticipated;

(4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold."

*Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 637–638 (Mo. banc 1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). It is implicit that the plaintiffs establish the defective design of the TMJ implants by expert testimony. *McDowell v. Kawasaki Motors Corp. USA,* 799 S.W.2d 854 (Mo. App.1990). In such circumstances, a plaintiff can be expected to obtain a qualified opinion a defective product "directly caused or directly contributed to cause the damages claimed in the petition." § 538.225.1. That being so, plaintiffs' claim falls within the ambit of § 538.225 declared by *Mahoney.*

Further, if the language prescribed by the statute for the affidavit creates an ambiguity, that ambiguity must be resolved by statutory construction. All of the sections of Chapter 538 must be construed together. *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981). Section 538.300 RSMo Cum. Supp.1992 provides "[t]he provisions of sections ... 537.760 to 537.765 [products liability] ... shall not apply to ... sections 538.205 to 538.230." As noted, recovery upon the basis of strict liability, as set forth in *Restatement (Second) of Torts* § 402A, was judicially established by *Keener* and has been developed by cases such as *Fahy,* supra, and its predecessors. Relators contend that such a claim is encompassed in the phrase "[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services," as used in Chapter 538, including § 538.225 which requires an affidavit which plaintiffs did not file.

In 1987, the legislature adopted §§ 537.-760 to 537.765—Products Liability. Those sections codify, and to some extent modify, the preexisting judicially adopted doctrine of strict liability. However, at the same time the legislature adopted § 538.300 which, among other things, provides §§ 537.760 to 537.765 do not apply to §§ 538.205 to 538.230. Chapter 538 does not create any cause of action for improper health care. It places limits on noneconomic damages, it defines the basis for punitive damages and contains other provisions concerning damages that may be recovered on causes of action that exist independently of that Chapter. Had the legislature not intended and understood Chapter 538 to include strict liability as independently established and developed by case law, it would have not been necessary to declare that the codification and modification of §§ 537.760 to 537.765, which do not provide such limitations, are not applicable to Chapter 538. The legislature will not be presumed to have enacted a meaningless section. *Staley v. Missouri Director of Revenue,* supra.

Moreover, the basic purpose of Chapter 538 has been stated in the following terms:

"It is readily understood from the history and text of *Chapter 538* that the enactment is a legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services. The effect intended for *§ 538.225* within that scheme is to cull at an early stage of litigation suits for negligence damages against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims. The preservation of the public health is a paramount end of the exercise of the police power of the state." (Emphasis in original.) *Mahoney*, 807 S.W.2d at 507.

That being the purpose of the legislature, it is difficult to imagine the legislature intended to exclude strict liability claims against health care providers from the provisions of Chapter 538 and, in particular, § 538.225. In my opinion, that section is applicable to the plaintiffs' petition.

It has also been argued that Chapter 538 does not apply to plaintiffs' claim because the TMJ implants were transferred to Lyn before the effective date of that chapter. This argument stems from the following section:

"The provisions of sections 538.205 to 538.230 shall apply only to causes of actions arising on or after February 3, 1986." § 538.235.

However, this argument is not valid. It is established that a cause of action based upon strict liability accrues when an injury is manifested. *King v. Nashua Corp.*, 763 F.2d 332 (8th Cir.1985). Also see *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984). The plaintiffs plead that the allegedly defective TMJ implants were removed in 1988 and "that Lyn discovered less than five (5) years prior to filing of this petition that the proplast implant as hereinabove referenced were defective." As noted, the petition was filed November 13, 1991. The petition demonstrates that the cause of action alleged accrued after February 3, 1986. Cf. *Brink v. Kansas City*, 358 Mo. 845, 217 S.W.2d 507 (banc 1949).

Finally, it has been suggested that even if § 538.225 is applicable to plaintiffs' claims, that section places the dismissal of the action within the discretion of the trial court and the exercise of that discretion cannot be controlled by prohibition or mandamus. This suggestion is based upon the following portion of § 538.225:

"5. If the plaintiff or his attorney fails to file such affidavit the court *may*, upon motion of any party, dismiss the action against such moving party without prejudice." (Emphasis added.)

Standing alone, the term "may" normally refers to a permissive and not mandatory action. But, the use of the word "may" does not always denote permissive action. The context in which the word is used may create an ambiguity concerning its meaning. See *Collier v. Roth*, 468 S.W.2d 57 (Mo.App.1971). That is true in this case.

The requirement of the affidavit is stated in the following terms: "[H]is attorney *shall* file an affidavit with the court". (Emphasis added.) § 538.225.1. Section 538.225.4 dictates that "[s]uch affidavit *shall* be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended." (Emphasis added.) Section 538.225 gives the court two alternative courses of action. The first, is to extend the time for filing the affidavit. The second, if the affidavit is not filed and no extension is granted, is to dismiss the action. To hold that the dismissal is discretionary, even though no affidavit is filed and no application for extension is filed, would render the section nugatory. It obviously was the intent of the legislature that unless the required affidavit was filed within 90 days or an extension is granted, the health care provider should not be put to the expense of the defense of the action. *Mahoney*, supra. That being so, as used in § 538.225.5, the term "may" is mandatory.

An office of an extraordinary legal remedy is to prevent a defendant from being required to defend a claim barred by stat-

ute. *State ex rel. General Elec. Co. v. Gaertner,* 666 S.W.2d 764 (Mo. banc 1984).

"Forcing upon a defendant the expense and burdens of trial when the claim is *clearly* barred is unjust and should be prevented." *Id.* at 768. (Concurring in result opinion of Chief Justice Rendlen.) (Emphasis in original.)

"A discretionary writ in prohibition lies to stop a circuit court from proceeding on a claim asserted against a party where the claim is clearly barred and proceeding on the claim will produce useless and unwarranted litigation. *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184, 187 (Mo. banc 1985); *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 500 (Mo.App.1985); *State ex rel. Hamilton v. Dalton,* 652 S.W.2d 237, 239 (Mo.App.1983)." *State ex rel. Simmerock v. Brackmann,* 714 S.W.2d 938, 939 (Mo.App.1986).

Also see *State ex rel., Agri–Trans Corp. v. Nolan,* 756 S.W.2d 203 (Mo.App.1988). Cf. *Arana v. Reed,* 793 S.W.2d 224 (Mo.App. 1990).

Relators pray that this court direct the trial court to dismiss the underlying action with prejudice. Mandamus is a more appropriate remedy.

"The distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent." *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 148 (Mo.App.1984).

"In the instant case the controlling issue—[the dismissal of the underlying action]—has been fully briefed by both sides and it would be a sacrifice of substance to form if this court were to hold, as it does not, that review of the trial court's ruling on that issue should be denied because relator resorted to prohibition rather than mandamus. This court will resolve the basic dispute on its merits." *Enke v. Anderson,* 733 S.W.2d 462, 466 (Mo.App.1987).

However, § 538.225.5 provides the court may dismiss the action *without* prejudice. I would grant that relief.