Jo Ann BELL, Plaintiff–Appellant,

v.

**POPLAR BLUFF PHYSICIANS GROUP, INC., d/b/a Doctors Regional Medical Center, Defendant–Respondent.**

No. 18933.

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 1994.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
June 7, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Randy R. Cowherd, Grant Q. Haden, Schroff, Glass & Newberry, Springfield, for plaintiff-appellant.

Kenneth W. Bean, William C. Dodson, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, for defendant-respondent.

PREWITT, Judge.

■ Plaintiff appeals from summary judgment granted against her. On an appeal from summary judgment, this court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid-Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party seeking summary judgment has to show a right to judgment based on undisputed facts. *Id.* at 378.

Plaintiff alleged in her petition that a "temporomandibular interpositional" implant was purchased by her from defendant and placed in her person on January 6, 1987, at a hospital operated by defendant. In Count I she seeks damages based on strict liability. In Count II she seeks damages for negligence.

Defendant contends that summary judgment was proper on Count I because "[s]trict product liability does not apply to surgical implants because the hospital is not a seller within the meaning of The Restatement (2d) of Torts § 402A." It asserts its relationship with persons such as plaintiff "is primarily the rendition of professional services." Defendant says it "merely provided it [the implant] pursuant to an independent physician's direction as an integral and inseparable part of its provision of professional services."

■ In *State ex rel. American Medical International v. Sweeney*, 845 S.W.2d 648 (Mo.App.1992), this district quashed its preliminary order of prohibition and dismissed the petition seeking prohibition. In dissenting from that determination, Maus, J., believed that the petition in the underlying action should have been dismissed for failure to file the affidavit required by § 538.225, RSMo 1986. However, he also discussed the

contention of relators that surgical implants sold by relator at a hospital it operated cannot be the subject of an action based on strict liability. He concludes that strict liability will lie when a hospital sells defective implants. *Sweeney*, 845 S.W.2d 648, 648–650 (Maus, J., dissenting). We believe that this discussion in the dissent is well reasoned, and relevant to plaintiff's contentions on Count I. We adopt as a part of this opinion the portion of the dissent discussing whether a strict liability action could lie for a hospital selling surgical implants.

■ We recognize that the Western District of this court in *Hershley v. Brown*, 655 S.W.2d 671 (Mo.App.1983), held that strict liability is not a basis for recovery against medical physicians. Whether there is a distinction between physicians and hospitals in the present context we need not decide, but believe that products liability claims should be allowed to be maintained in strict liability in tort against a seller whether or not such sales are a substantial part of its operation or business. Being incidental to the hospital's purpose, if such sale is, should not relieve it of liability any more than if a hospital sells a defective toy at its gift shop or a hairdresser sells defective hair spray which may be incidental to her other services.[1]

■ Moreover, a sale of a product is not required to bring an action for strict liability. Liability is imposed on those placing a product in the stream of commerce. The product need not be sold if it has been placed in the stream of commerce by other means. *Com'l Distribution Ctr. v. St. Regis Paper Co.*, 689 S.W.2d 664 (Mo.App.1985). *See also* § 537.-760, RSMo 1993 (defining products liability claim, as requiring a product be "transferred ... in the course of ... business"); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984) (strict liability not limited to sellers); *Chubb Group of Ins. v. C.F. Murphy & Assoc.*, 656 S.W.2d 766 (Mo.App.1983) (products liability applies to welding steel beams if defendant "provided" the beams); *Gabbard v. Stephenson's Orchard, Inc.*, 565 S.W.2d

---

1. We note, although not with great significance, that defendant paid $154 for the implant and charged plaintiff $283.00 for it.

753 (Mo.App.1978) (products liability applicable to orchard who "furnished" defective ladders for use by customers picking apples). *But cf. Katz v. Slade,* 460 S.W.2d 608 (Mo. 1970) (declining to apply products liability to golf course supplying defective golf carts, distinguished in *Gabbard*).

In *Racer v. Utterman,* 629 S.W.2d 387, 398–399 (Mo.App.1981), the Eastern District of this court found that strict liability did not apply to a hospital for injuries to a patient caused by a surgical drape which caught fire because the hospital was a user of the drape rather than a seller. Its rationale does not control where as here, the article was transferred to another.

Results in other jurisdictions vary. *Hector v. Cedars–Sinai Medical Center,* 180 Cal. App.3d 493, 225 Cal.Rptr. 595 (1986), determined that a products liability action would not lie against a hospital which transferred a pacemaker as it is a provider of services rather than the seller of a product. 225 Cal.Rptr. at 600. Of course, an entity obviously can do both as the California Supreme Court recognized in *Murphy v. E.R. Squibb & Sons,* 40 Cal.3d 672, 221 Cal.Rptr. 447, 451, 710 P.2d 247, 251 (1985).

*Cafazzo v. Central Medical Health Services,* 430 Pa.Super. 480, 635 A.2d 151 (1993), refused to find a hospital strictly liable for a defective implant, concluding "a hospital not involved in the development or manufacture of the product is in no better position to prevent circulation of a defective product." 635 A.2d at 154. That would be true, however, as to most products sold by retailers.

In *Greenberg v. Michael Reese Hospital,* 83 Ill.2d 282, 47 Ill.Dec. 385, 388, 415 N.E.2d 390, 393 (1980), the court noted that it is a distortion to take what is a sale and turn it into a service, perhaps to reach the desired result. *See also Cunningham v. MacNeal Memorial Hospital,* 47 Ill.2d 443, 266 N.E.2d 897 (1970); *Russell v. Community Blood Bank,* 185 So.2d 749 (Fla.App.1966), *aff'd as modified* 196 So.2d 115 (Fla.1967). The court said in *Greenberg,* 47 Ill.Dec. at 389, 415 N.E.2d at 394:

"In cases involving goods and other tangible physical materials which are in some way bad, imposition of liability unquestionably enhances the public interest in human life and health. However, in cases which deal with the conduct of individuals or institutions which themselves are pledged to protect human life and health, precautions must be taken to avoid an ultimate diminution of protection."

Here, plaintiff in effect attacks the implant itself rather than any conduct of the hospital in its selection or handling. We cannot say that the record establishes that plaintiff is making a veiled malpractice claim. The hospital's account of the limited nature of its role in the decision making process surrounding the selection and use of the implant suggests no professional conduct of the hospital is being questioned by plaintiff directly or indirectly, as may have been the case in *Hershley.* In this situation we conclude that the sales aspect of the transaction may predominate over the service aspect and the policy of strict liability in tort is served by allowing this action.

Neither the policy of strict liability in tort as adopted by our Supreme Court nor as defined by the Missouri legislature reflect an indication that health care providers are to be excepted. *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362 (Mo. 1969), adopted strict liability in tort as stated in 2 RESTATEMENT, LAW OF TORTS, SECOND, § 402A. The court stated strict liability in tort insures that costs due to injury resulting from defective products are borne by manufacturers and sellers rather than by persons powerless to protect themselves. 445 S.W.2d at 364.

The legislature in 1987, effective July 1, 1987, enacted § 537.760, defining products liability claims. Although enacted well after significant publicity regarding malpractice claims, it has no exception for health care providers. When a statute "admits of no exception ... the Court should not engraft one by judicial legislation." *Poling v. Moitra,* 717 S.W.2d 520, 522 (Mo. banc 1986). Section 537.760 is set forth marginally.[2]

2. **537.760. Products liability claim defined.**—As used in sections 537.760 to 537.765, the term

"**products liability claim**" means a claim or portion of a claim in which the plaintiff seeks relief

For this court to deny plaintiff's claim on Count I, it would create an exception for hospitals and perhaps other health care providers. This is contrary to the purposes of strict liability and products liability claims as defined by the legislature. We decline to do so.

Defendant next claims that both counts were properly denied "in that plaintiff's petition was filed outside the applicable statute of limitations, § 516.015, [apparently intending § 516.105] RSMO 1986." Section 516.105 is set forth marginally.[3]

■ The legislative intent in enacting a statute is to be determined from the language used and those words are construed in their plain and ordinary meaning. *Matter of A___ F___,* 760 S.W.2d 916, 918 (Mo.App.1988). Words and phrases having a technical meaning, however, are to be applied in their technical sense, unless it appears they were intended to be used otherwise. *City of St. Louis v. Triangle Fuel Co,* 193 S.W.2d 914, 915 (Mo.App.1946). Technical words are those which pertain to the arts, science, business, profession, sports or the like. *Rathjen v. Reorganized School District R–II,* 365 Mo. 518, 284 S.W.2d 516, 523 (banc 1955).

■ Plaintiff contends that her claim is not barred by § 516.105 because that statute "is not applicable to strict liability claims not asserting malpractice or negligence against the health care provider." She contends that her "suit is a strict products liability action against a hospital in connection with the sale of a defective product, not a negligence action as a result of any conduct of employees of the hospital."[4]

It appears to us that the question is whether either or both counts of plaintiff's petition fall within the language of § 516.105 covering "[a]ll actions ... for malpractice, negligence, error or mistake related to health care". The key words in defining the type of actions covered are "malpractice", "negligence", "error" or "mistake".

■ Discussing those words in the order listed in the statute, "malpractice" is defined as "professional misconduct or unreasonable lack of skill." BLACK'S LAW DICTIONARY 959 (6th ed. 1990). Medical malpractice requires negligence. *See Eidson v. Reproductive Health Services,* 863 S.W.2d 621, 626 (Mo. App.1993). For instructional purposes it is defined as "the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the mem-

---

in the form of damages on a theory that the defendant is strictly liable for such damages because:

(1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and

(2) The product was used in a manner reasonably anticipated; and

(3) Either or both of the following:

(a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or

(b) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

3. **516.105. Actions against health care providers (medical malpractice)** All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health

care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, except that a minor under the full age of ten years shall have until his twelfth birthday to bring action, and except that in cases in which the act of neglect complained of its introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs, but in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of.

4. Plaintiff does not assert that the "foreign object" exception in § 516.105 applies. Regarding that exception *see Hershley v. Brown,* 655 S.W.2d 671, 675 (Mo.App.1983). *See also Smith v. Paslode Corp.,* 799 F.Supp. 960 (E.D.Mo.1992).

bers of defendant's profession." MAI 11.06 (4th ed. 1991).

Other jurisdictions say malpractice in the health care field occurs when there is a departure from the recognized standards in the community. *Smith v. Klebanoff,* 84 N.M. 50, 499 P.2d 368, 371 (Ct.App.1972). It is said to be "the failure ... to exercise diligence, care and skill, such as ordinarily possessed by members of [the] profession." *Burns v. American Casualty Co.,* 127 Cal.App.2d 198, 273 P.2d 605, 608 (1954). *See also Jacoby v. Kaiser Foundation Hospital,* 1 Haw.App. 519, 622 P.2d 613, 617 (1981) ("[I]n the context of this kind of case injury is legal injury is legal wrong is malpractice is cause of action is negligence.")

"Negligence" is "the failure to use the degree of care required under the particular circumstances". *Duncan v. Missouri Bd. for Architects,* 744 S.W.2d 524, 532 (Mo.App. 1988). Although a tort action, strict liability is not based upon negligence, and the two theories are separate and distinct in Missouri. *Porter v. C.A. Dawson & Co.,* 703 F.2d 290, 292 (8th Cir.1983); *Aronson's Men's Stores v. Potter Electric Signal Co.,* 632 S.W.2d 472, 474 (Mo. banc 1982); *Warriner v. Eblovi,* 485 S.W.2d 700, 702 (Mo.App. 1972). *See also State ex rel. Apco Oil Corp. v. Turpin,* 490 S.W.2d 400, 405 (Mo.App. 1973) (products liability cases are not based on contract warranties, but strict liability in tort). *But cf. Ragland Mills v. General Motors,* 763 S.W.2d 357, 359 (Mo.App.1989) (three theories available in products liability case: strict liability, negligence and breach of warranty).

"Error" has been said to be "stronger" than "mistake", particularly in legal parlance. *Mansur v. Morris,* 355 Mo. 424, 196 S.W.2d 287, 291–292 (banc 1946). However, we do not assume those terms are used in a legal sense, but as those words are used by the public generally. As such, "error" is said to include:

"1. An act, assertion, or belief that unintentionally deviates from what is correct, right, or true. 2. The condition of having incorrect or false knowledge. 3. The act or an instance of deviation from the accepted code of behavior; a transgression; wrongdoing. 4. A mistake". THE AMERICAN HERITAGE DICTIONARY 445 (1978).

"Mistake" is commonly said to be error or fault, misconception or misunderstanding. THE AMERICAN HERITAGE DICTIONARY 840 (1978). Although malpractice, negligence, error, or mistake are not necessarily the same, they indicate conduct which must be actionable or there would be no such action for the statute to limit the time of bringing.

*Burns* considered the relative meanings of "malpractice", "negligence", "error", and "mistake". It concluded that at least when used together they do not mean the same thing. The opinion states that a health care provider may err or make a mistake without being guilty of malpractice; malpractice having a narrower meaning than "error" or "mistake". 273 P.2d at 608–609.

Both parties cite and discuss *Rowland v. Skaggs Companies, Inc.,* 666 S.W.2d 770 (Mo. banc 1984). The court there discussed § 516.105, concluding that it did not apply to a third-party action for contribution filed by a pharmacy against the prescribing physician. The court stated, 666 S.W.2d at 772–773:

"The statute, read in its entirety, reveals an unequivocal legislative intent to make only a specified class of suits brought against health care providers subject to the provision's two-year statute of limitations. The legislature qualified the all-inclusive opening phrase '[a]ll actions' with the words 'for damages for malpractice, negligence, error or mistake related to health care ...' The legislature's use of the latter phrase evinces a desire to confine suits subject to the short statutory period in § 516.105 to those enumerated. [citing cases]

\*  \*  \*  \*  \*  \*

The statute also has been interpreted to govern in cases where its terms comprehend the substance of the health care consumer's claim. As the court of appeals correctly observed, § 516.105 has been held applicable in cases where a consumer of health care sued a health care provider for breach of contract [citing cases]. Rely-

ing on these cases, along with the legislature's use of the phrase '[a]ll actions,' the Western District concluded that an action for contribution against a health care provider fell within the ambit of § 516.105. We believe the court of appeals construed the holdings in these decisions too broadly. In each of the cited cases, the claim asserted against the health care provider arose from some improper or negligent act by the health care provider. The suit in each case, however, was framed as an action for breach of contract in an attempt to avoid the two-year statute of limitations in § 516.105. Looking at the substance, not the form, of the action, we ruled that the suits were to be governed by § 516.105. Properly interpreted, [the last cited cases] hold that when a health care provider is liable under both tort and contract theories, the two-year statute of limitations provided by § 516.105 cannot be circumvented by denominating the suit as one in contract." [5]

"Strict liability in tort" has been recognized as a theory to recover in this state since *Keener* was decided in 1969. Section 516.105 was enacted in 1976 (L.1976, p. 767, § 2) and because Missouri then recognized products liability claims brought on a strict liability in tort theory plaintiff urges that had the legislature intended to cover such theory in § 516.105, it would have done so.

In adopting strict liability in tort as stated in 2 RESTATEMENT, LAW OF TORTS, SECOND, § 402A, the court in *Keener* noted that this section created liability although "the seller has exercised all possible care". 445 S.W.2d at 364. As defined in *Keener* and § 537.760, RSMo1993, see note 2 infra, fault is not a requirement of a products liability claim.

Malpractice, negligence, error, and mistake all connote some type of fault, whether or not intentional. Strict liability requires no fault. Liability under that theory can occur absent malpractice, negligence, error, or mistake. Count I is not barred by § 516.105. Count II, based upon negligence, is barred.

The portion of the judgment dismissing Count II of plaintiff's petition is affirmed.

The portion of the judgment dismissing Count I of plaintiff's petition is reversed and the cause remanded for further proceedings.

FLANIGAN, P.J., and CROW, J., concur.

**5.** There is no claim here that defendant might be liable both in tort and contract.