Patricia MULLIGAN, Appellant,

v.

TRUMAN MEDICAL CENTER,
Respondent.

No. WD 52265.

Missouri Court of Appeals,
Western District.

July 8, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 1997.

Application to Transfer Denied
Sept. 30, 1997.

Stanley J. Goodkin, Clayton, for appellant.

Timothy S. Frets, Randall L. Rhodes, Douthit, Frets, Rouse & Gentile, L.L.C., Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Patricia Mulligan appeals from the trial court's order dismissing her strict products liability action against Truman Medical Center for failure to state a claim. Ms. Mulligan contends that the trial court erred by dismissing her petition upon its finding that hospitals, such as Truman Medical Center, cannot be held strictly liable for defective products. This court finds that Ms. Mulligan sufficiently pleaded a claim for strict products liability; Missouri law permits strict products liability claims to be asserted against hospitals; and the claim is not barred by the provisions of the medical malpractice statute of limitations, § 516.105, RSMo 1994.[1] Therefore, the dismissal is reversed and the cause is remanded for further proceedings.

In 1986, Ms. Mulligan underwent surgery at Truman Medical Center to have two temporomandibular joint (TMJ) interpositional implants placed in her jaw.[2] The TMJ implants contained Proplast, a material manufactured by Vitek, Inc. As a result of an alleged defect in the TMJ implants caused by the Proplast, Ms. Mulligan incurred significant harm to her person. Ms. Mulligan brought a strict products liability action against the hospital and Dr. E.L. Mosby.

Ms. Mulligan voluntarily dismissed Dr. Mosby as a defendant. The trial court sustained Truman Medical Center's motion to dismiss for failure to state a claim upon which relief could be granted. Ms. Mulligan appeals the dismissal of her claims against Truman Medical Center.

■ On review of a trial court's dismissal of a petition for failure to state a claim upon which relief can be granted, "the facts averred in the pleading are assumed to be true and are construed liberally in favor of appellant." *Johnson v. Kraft General Foods, Inc.,* 885 S.W.2d 334, 335 (Mo. banc 1994). "A petition is sufficient to withstand a motion to dismiss for failure to state a claim if it invokes substantive principles of law entitling plaintiff to relief and alleges ultimate facts informing defendant of that which the plaintiff will attempt to establish at trial." *Ritterbusch v. Holt,* 789 S.W.2d 491, 493 (Mo. banc 1990). A pleading states a claim if there is any basis for relief within the facts pleaded. *Yoest v. Farm Credit Bank of St. Louis,* 832 S.W.2d 325, 328 (Mo.App.1992).

In her petition, which was premised on both design defect and failure to warn theories of products liability, Ms. Mulligan claimed that, as a direct and proximate result of the TMJ implants, she sustained damages including scarring, adhesions, granulation of tissue, bone changes, bone and tissue destruction and immune system inflammatory responses. Ms. Mulligan also cited constant pain and muscle spasms in her face, head and ears, as well as permanent nerve damage in the lower portion of her face. Finally, Ms. Mulligan alleged that the TMJ implants caused permanent muscle damage making her walk with a limp and severe infections which shortened her life expectancy due to an irreversible heart deficiency.

According to her first-amended petition, Ms. Mulligan first became aware of the damage caused by the TMJ implants in November 1993 because "the destruction process

---

1. All statutory references are to the Revised Statutes of Missouri 1994 unless otherwise noted.

2. These implants are intended to replace the temporomandibular joints which connect the lower jaw to the skull and are akin to a ball and socket. The Sloan–Dorland Annotated Medical Legal Dictionary 394 (1987).

was a gradual deterioration at the biological, pathological and microscopic levels." Ms. Mulligan alleged in count I that the implants were in a defective and unreasonably dangerous condition when sold or transferred to her and that they were put to their normal ordinary use. She asserted in count II that the implants were unreasonably dangerous when put to a reasonably anticipated use without knowledge of their characteristics and that there was not an adequate warning of the danger. Furthermore, according to the petition, Ms. Mulligan incurred hospital and medical bills in excess of $275,000 and suffered lost wages of more than $50,000.

In its answer, Truman Medical Center moved to dismiss Ms. Mulligan's pleading on several grounds. First, it alleged that health care providers cannot be held strictly liable in tort under Missouri case law because health care providers are providers of a service rather than sellers of goods. Second, in the alternative, it claimed that even if Ms. Mulligan successfully stated a claim, she had failed to file her pleading within the applicable statute of limitations of § 516.105.

The trial court dismissed Ms. Mulligan's petition for failure to state a claim upon which relief could be granted. Its order was based on the statutory provisions of Chapter 538 concerning tort actions against health care providers for improper health care. The trial court reasoned that since § 538.300 provides that the strict liability provision of § 537.760 "shall not apply to actions" under Chapter 538, this language prohibits strict products liability claims against health care providers, such as Truman Medical Center.

As her only point on appeal, Ms. Mulligan claims that the trial court erred by dismissing her first-amended petition because it states a valid strict liability claim against Truman Medical Center since: (a) Missouri case law authorizes such suits; (b) Missouri's products liability statute, § 537.760, permits strict liability claims against a hospital; and (c) the statute of limitation provisions of § 516.105 which govern malpractice actions do not bar her strict liability claims.

■ A pleading alleging strict products liability based on an allegedly defective product must set forth ultimate facts establishing the following elements: (1) the product was sold in the course of the defendant's business; (2) at that time, the product was in a "defective condition unreasonably dangerous when put to a reasonably anticipated use"; (3) the product was put to use in a reasonably anticipated manner; and (4) the plaintiff was damaged as a direct result of a defective condition which existed at the time the product was sold. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 637–38 (Mo. banc 1987).

■ As to the first element, Ms. Mulligan alleged in count I that, as part of its business practices, Truman Medical Center sold the TMJ implants to her in a course of treatment to correct her TMJ dysfunctions. Second, Ms. Mulligan alleged that the TMJ implants were in a defective condition unreasonably dangerous when put to their reasonably anticipated use at the time they were placed in her jaw. Third, Ms. Mulligan's petition contained ultimate facts indicating that the TMJ implants were used in a manner reasonably anticipated, that is to correct her temporomandibular joint dysfunction. Finally, the petition alleged that as a direct and proximate result of the defective condition of the TMJ implants, Ms. Mulligan was injured in numerous ways. These allegations are sufficient to state a claim for strict products liability based on a design defect under the *Fahy* standard.

■ A pleading alleging strict liability-failure to warn must contain elements similar to a design defect cause of action:

> The elements of a cause of action for strict liability-failure to warn are: (1) defendant sold the product in question in the course of defendant's business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning.

*Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 13 (Mo. banc 1994). With the exception of the second and third elements, we engage in

the same analysis as described for design defect cases. In the second element, there is the additional requirement that the product be used as reasonably anticipated without knowledge of its unreasonably dangerous nature. Ms. Mulligan alleged such facts in her second count. As for the third element, the requirement that the defendant did not give adequate warning of the danger, Ms. Mulligan alleged in her pleading that Truman Medical Center did not give adequate warning of the possible dangers of the TMJ implants. Therefore, under *Tune*, Ms. Mulligan's petition is sufficient to state a strict liability-failure to warn claim.

Although Ms. Mulligan has successfully stated a strict products liability claim under both design defect and failure to warn theories against Truman Medical Center, this does not end this court's inquiry. Whether strict products liability is available against hospitals is at issue in this case. Both case law and statutory provisions are relevant to this court's determination of that question.

The trial court concluded that § 538.300 mandated a dismissal of Ms. Mulligan's petition. Section 538.300 states that:

The provisions of sections ... 537.760 to 537.765, RSMo, shall not apply to actions under sections 538.205 to 538.230.

Relying on this statute, the trial court dismissed Ms. Mulligan's petition for failure to state a claim based on its interpretation that the language of § 538.300 provides that strict products liability claims are not available against health care providers. In order to determine the validity of this interpretation of § 538.300, this court must consider not only the language of the statute, but also its relationship to the other provisions of the enacting legislation, including the products liability provisions of §§ 537.760 through 537.765 and to the state of the law which the legislature was addressing. *In the Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. banc 1996) (it is presumed that the legislature is aware of the state of the law at the time of its enactment).

■ Chapter 538 was enacted in 1986 as a "legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essen-

tial services." *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503, 507 (Mo. banc 1991). The intended effect of the statutes was to eliminate meritless and frivolous suits for negligence damages against health care providers. *Id.* Chapter 538 does not attempt to codify any cause of action, it merely provides for limitations or modifications of causes of actions against health care providers arising out of the improper rendering of health care services. The statutory definition of health care services includes the "transfer to a patient of *goods* or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized." Section 538.205(5) (emphasis added).

In 1987, during the next legislative session, the legislature adopted House Bill 700 as part of its overall tort reform. House Bill 700 was intended to "restore the affordability and availability of liability insurance." 1987 Mo. Laws 812. This bill provided, *inter alia*, for the addition of a section to Chapter 538, § 538.300, which eliminates fourteen statutes from applying to actions under §§ 538.205 to 538.230. The bill also enacted four sections, §§ 537.760 to 537.765, which pertain to products liability causes of action. These four products liability statutes were included within the fourteen statutes which § 538.300 excluded from application to actions under §§ 538.205 to 538.230.

Sections 537.760 through 537.765 define products liability claims and address certain defenses to products liability causes of action. Section 537.760 defines products liability claims, recognizing causes of action for both defective design of a product and failure to warn of an inherent danger in the product. Section 537.762 provides that "a defendant whose liability is based solely on his status as a seller in the stream of commerce" may be dismissed from a products liability action if another defendant is in the case from whom full recovery can be made. Section 537.764 provides that a "state of the art" defense is a complete defense to a products liability action. Finally, § 537.765 abolishes contributory fault as a complete bar to recovery in

products liability claims and adopts comparative fault.

It is important to note that strict products liability causes of action did not originate from the passage of § 537.760. Prior to this statute, the Supreme Court had recognized a common law strict products liability cause of action in *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362, 364 (Mo.1969). In establishing this cause of action, the Court adopted the rules of strict liability in tort stated in the Restatement (Second) of Torts, § 402A.[3] *Id.*

■ The continued viability of a common law cause of action for strict products liability after the enactment of §§ 537.760 to 537.765 is apparent from a plethora of cases decided after the date the statutes became effective. The most significant case is *Connelly v. Iolab Corp.,* 927 S.W.2d 848 (Mo. banc 1996), where the Supreme Court considered whether federal statutes which regulate medical devices preempt Missouri common law causes of action for negligence, strict liability, failure to warn, failure to obtain informed consent and fraud. *Id.* at 850–51. In holding that such causes of action were not preempted, the Supreme Court recognized the common law causes of action for strict products liability for design defect and failure to warn almost ten years after the legislature passed the tort reform provisions of §§ 537.760 through 537.765. *Id.* at 853. The continued acknowledgment of common law causes of action for strict products liability demonstrates that the effect of the passage of §§ 537.760 to 537.765 was to modify the common law cause of action, not abrogate it.

■ This finding is not contradicted by § 538.300. Section 538.300 provides, *inter alia,* that the provisions of §§ 537.760 to

537.765 do not apply to tort actions based on *improper* health care under Chapter 538. Under the primary rule of statutory construction, the intent of the legislature is to be ascertained from the language used in the statute and effect should be given to that intent, if possible, considering the plain and ordinary meaning of the words used in the statute. *Maudlin v. Lang,* 867 S.W.2d 514, 516 (Mo. banc 1993). The plain and ordinary language of § 538.300 does not evidence an intention of the legislature to preclude strict products liability actions against health care providers. The meaning of the exclusionary language in § 538.300 is that the provisions of the 1987 tort reform act are inapplicable in actions against health care providers. In other words, in actions against health care providers, defendants whose liability is based solely on their status as sellers may not be dismissed from suits, there is no "state of the art" defense, and contributory fault is not abolished as a complete bar to recovery.

This interpretation of the law is consistent with the decision reached by the Southern District of this court in a similar factual situation. In *Bell v. Poplar Bluff Physicians Group,* 879 S.W.2d 618, 619 (Mo.App.1994), the plaintiff brought a strict products liability action against the hospital where she underwent a course of treatment during which a TMJ implant was inserted in her jaw to correct her temporomandibular joint dysfunctions. The trial court entered summary judgment in favor of the hospital. The plaintiff appealed from that order. The hospital argued that summary judgment was proper because hospitals are not amenable to lawsuits under a theory of strict products liability since they are primarily providers of services, not sellers of goods.

**3.** Section 402A of the Restatement (Second) of Torts provides the basis for strict products liability:

    (1) One who sells any product in a defective condition, unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

      (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

      (a) the seller has exercised all possible care in the preparation and sale of his product, and

      (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In reversing the trial court's order, the Southern District adopted a portion of Judge Maus' dissent in *State ex rel. American Med. v. Sweeney*, 845 S.W.2d 648, 649–50 (Mo.App. 1992) which concluded that hospitals may be subject to strict liability when they have sold defective TMJ implants. *Bell*, 879 S.W.2d at 619. The dissent in *Sweeney* reasoned that a hospital sells TMJ implants as well as a course of treatment when it provides services to a patient. *Sweeney*, 845 S.W.2d at 649–50 (Maus, J. dissenting).

With the *Sweeney* dissent as its starting point, the *Bell* court reasoned that hospitals should be strictly liable in products liability whether or not the sale of the TMJ implants constituted a "substantial part of its operation or business." *Bell*, 879 S.W.2d at 619. Furthermore, the court noted, a sale of a product is not necessary to bring a strict products liability action. *Id. See also Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984); *Gabbard v. Stephenson's Orchard, Inc.*, 565 S.W.2d 753, 757 (Mo.App. 1978). All that is necessary is that the plaintiff establish "some causal relationship between the defendant and the injury-producing agent." *Zafft*, 676 S.W.2d at 244. Using this analysis, the *Bell* court concluded that "[n]either the policy of strict liability as adopted by our Supreme Court [in *Keener*] nor as defined by the Missouri legislature reflect an indication that health care providers are to be excepted." *Bell*, 879 S.W.2d at 620. As a result, the court reversed the summary judgment granted to the hospital. *Id* at 623.

The Eastern District of this court reached the same result in identical fact situations in reliance on the *Bell* opinion. *See Brandon v. Southeast Missouri Hosp., Inc.*, 926 S.W.2d 113 (Mo.App.1996); *Pinkerton v. Southeast Missouri Hosp. Ass'n*, 926 S.W.2d 137 (Mo. App.1996). This court also finds the *Bell* opinion persuasive.

■ The real test for strict products liability is not the sale of a defective product or products, but the placing of that product in commerce. *Com'l Distribution Ctr. v. St. Regis Paper*, 689 S.W.2d 664, 670 (Mo.App. 1985). The purpose of strict products liability is to socialize losses associated with and caused by defective products. *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 492 (Mo. banc 1986). Under this doctrine, the costs of injuries are borne by the manufacturers and sellers who place a defective product on the market, rather than by the injured persons who have no power to protect themselves. *Keener*, 445 S.W.2d at 364. This purpose is furthered by its application to Truman Medical Center in this case. Therefore, Truman's allegation that it is primarily a provider of services rather than a seller of goods is irrelevant to the question.

■ Here, Ms. Mulligan alleges that Truman Medical Center sold her the TMJ implants as part of a course of treatment intended to correct her temporomandibular joint dysfunctions. Because a seller of a product is in the same position as the product's manufacturer for strict products liability purposes, Ms. Mulligan could sue anyone in that position. *Id* at 365. Since Truman was in the chain of those who placed the defective TMJ implants in the stream of commerce, it could be found liable in a strict products liability cause of action for injuries caused by the defective implants. *Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo.App.1987).

Truman Medical Center argues that the policy considerations underlying this court's ruling in *Hershley v. Brown*, 655 S.W.2d 671 (Mo.App.1983), compel an affirmance of the trial court's dismissal of Ms. Mulligan's action. In *Hershley*, the plaintiff sued a physician for damages caused by a defective tubal ring inserted during a sterilization procedure performed by the doctor. The plaintiff's petition alleged strict products liability, negligence and fraudulent misrepresentation. In affirming the trial court's dismissal of the plaintiff's cause of action for strict liability, the court noted that there was no precedent for applying strict liability to the rendition of professional medical services. *Id.* at 674. In its decision, the court adopted policy statements of other jurisdictions that physicians should not be held strictly liable because "strict liability will inevitably increase the cost for medical services, which might make them beyond the means of many consumers, and [the] imposition of strict liability might

hamper progress in developing new medicines and medical techniques." *Id.* at 674–75.

There have been significant changes in Missouri law since this court's decision in *Hershley.* As previously discussed, the legislature addressed the issue of tort reform when it enacted Chapter 538 and Senate Bill 700. Contrary to the interpretation espoused by Truman Medical Center, these statutory provisions do not eliminate a cause of action for strict liability against health care providers. In addition, after the *Hershley* court cited case law finding that there was "no decision of any court applying the strict liability doctrine to the rendition of professional medical services," there are now three Missouri cases applying the strict liability doctrine to hospitals. *See Bell,* 879 S.W.2d at 620–21; *Brandon,* 926 S.W.2d 113; and *Pinkerton,* 926 S.W.2d 137. In light of these changes in Missouri's statutes and case law, this court declines to extend the holding of *Hershley* to actions against hospitals.

Truman Medical Center also contends that *Racer v. Utterman,* 629 S.W.2d 387 (Mo.App. 1981), should compel a ruling in its favor. In *Racer,* the Eastern District Court of Appeals held that a hospital was not strictly liable for injuries caused to a patient when a surgical drape caught fire because the hospital used, rather than sold, the drape. *Id.* at 398. As the *Bell* court noted, the rationale of *Racer* is inapplicable because it did not involve the required sale of a defective product. *Bell,* 879 S.W.2d at 620. Since Truman Medical Center sold a defective TMJ implant to Ms. Mulligan, Truman's reliance on *Racer* is misplaced and does not dictate the result in this case.

Sections 537.760 to 537.765 modify common law strict products liability causes of action. By adopting § 538.300, the provisions of §§ 537.760 to 537.765 were made inapplicable to tort actions against health care providers under §§ 538.205 to 538.230. As a result, the common law cause of action, without the modifications of §§ 537.670 to 537.765, is available to Ms. Mulligan. If the legislature believed that the preservation and protection of the health care system for the citizens of Missouri required the elimination of all causes of actions for strict products liability against health care providers, it could have expressed this intention in plain and ordinary language. It did not do so in § 538.300. Any resolution of the conflict between the public's interest in protecting injured persons from defective products placed in the stream of commerce by manufacturers and sellers, as well as the public's concern over the increased costs of health care and the continued integrity of the health care system, is best left to the legislature. Since the provisions of Chapter 538.300 do not eliminate a common law cause of action for strict products liability, the trial court erred in determining that Ms. Mulligan failed to state a claim against Truman Medical Center.

■ Although Ms. Mulligan successfully stated strict products liability claims against the hospital, this court must affirm the trial court's dismissal if it is sustainable on any ground supported by the motion to dismiss. *Miller v. Enyeart,* 893 S.W.2d 901, 904 (Mo. App.1995). Therefore, this court must consider Truman Medical Center's contention that Ms. Mulligan's claims are barred by the time limitations of § 516.105. Truman Medical Center alleges that Ms. Mulligan's claims are barred by the two-year statute of limitations found in § 516.105 because Ms. Mulligan filed her suit on June 24, 1995, more than two years after her 1986 surgery when the allegedly defective device was implanted. Section 516.105 provides:

> All actions against ... hospitals ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of ... and except that in cases in which the act of neglect complained of its introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of the alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence. . . .

■ Although an action may not be couched as one in medical malpractice, it is subject to this statute if it is, in substance, an

action for improper or negligent acts by a health care provider. *See Arbuthnot v. De-Paul Health Center*, 891 S.W.2d 564, 566 (Mo.App.1995). "However, not every action against a healthcare provider is covered by § 516.105." *Brandon*, 926 S.W.2d at 115. Section 516.105 is limited to actions in which the patient "seeks damages for injuries resulting from some improper, wrongful or careless acts or omissions on the part of a health care provider in the delivery of health care to the consumer." *Rowland v. Skaggs Companies, Inc.*, 666 S.W.2d 770, 772–73 (Mo. banc 1984). Certainly, the language of the statute itself indicates a legislative intention to confine its application to acts of negligence in that it refers to the "act of neglect" and the discovery of the "alleged negligence."

■ Ms. Mulligan's strict products liability action is not premised on any improper, wrongful or negligent acts on the part of Truman Medical Center. To the contrary, the essence of a strict liability action is the absence of an allegation of fault or negligence. *Bell*, 879 S.W.2d at 623; *Warriner v. Eblovi*, 485 S.W.2d 700, 702 (Mo.App.1972). Ms. Mulligan's complaints are against the TMJ implant itself. Since § 516.105 only applies to actions involving "[m]alpractice, negligence, error, and mistake [which] all connote some type of fault ...", this strict products liability action does not fall under its scope. *See Bell*, 879 S.W.2d at 623; *Brandon*, 926 S.W.2d at 113.

Further support for this interpretation is found in the title of § 516.105. Section 516.105 is labeled "Actions against health care providers (medical malpractice)." "Medical malpractice" connotes improper performance on the part of the physician which causes injury to the patient. *Barnhoff v. Aldridge*, 327 Mo. 767, 38 S.W.2d 1029, 1031 (1931). The fact that the legislature included the term "medical malpractice" in the title of this statute is strong evidence that the statute does not apply to strict products liability causes of action.

Therefore, Ms. Mulligan's strict products liability action against Truman is not barred by the two-year medical malpractice statute of limitations. *Pinkerton*, 926 S.W.2d at 138. The judgment of the trial court dismissing

Ms. Mulligan's claims against Truman Medical Center is reversed and remanded for proceedings consistent with this opinion.

All concur.